UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBBINS & MYERS, INC.,                                    01-CV-0201E(F)
                          Plaintiff,

          -vs-

J.M. HUBER CORPORATION and
H. MILTON HOFF,                                           MEMORANDUM
                    Defendants and
                    Third-Party Plaintiffs,                        and

          -vs-                                            ORDER[1]

ROBBINS & MYERS ENERGY SYSTEMS, INC. ,
BERKELEY FORGE AND TOOL, INC. and
THOMPSON HINE LLP,
                    Third-Party Defendants.

---

          This action arises out of the purchase by plaintiff Robbins & Myers, Inc.

("R&M") of the assets of Flow Control Equipment, Inc. ("FCE"), a wholly-owned

subsidiary of defendant J.M. Huber Corporation ("Huber") pursuant to a Stock

Purchase Agreement entered into in November 1997.  Prior to the execution of the

Stock Purchase Agreement, Huber disclosed to R&M that Huber and/or FCE had

manufactured 194 closures (the "Off-Specification Closures")[2] from steel which

did not meet the SA350LF2 specification (the "LF2 Specification") normally

utilized by Huber.  Sometime after the Stock Purchase Agreement was executed,

---

[1]This decision may be cited in whole or in any part.

[2]Closure Products consist of "hubs" and "caps" which are combined and "welded to tubular openings so as to provide access to those tubes, such as boilers, other pressure vessels and gas and oil pipelines.  Closure Products are often used to clean and perform maintenance inside pipelines."  Am. Compl. ¶6.

defendant H. Milton Hoff ("Hoff"), the former President of FCE, revealed to R&M that the number of such Off-Specification Closures was actually much larger than 194, and that such Off-Specification Closures numbered in the thousands.

On March 22, 2001, R&M filed a Complaint[3] alleging that Huber and Hoff had intentionally misrepresented the number of Off-Specification Closures which had been sold by Huber and/or FCE and that, had R&M known the true extent of the Off-Specification Closure problem, it never would have entered into the Stock Purchase Agreement.  R&M alleged that Huber and Hoff had fraudulently induced R&M to enter into the Stock Purchase Agreement, had committed statutory fraud in violation of Texas law and had violated Texas Securities Law.  On April 28, 2004 R&M filed an Amended Complaint adding a claim for negligent misrepresentation as well as additional factual allegations.  R&M seeks (1) disgorgement of the unjust enrichment Huber and Hoff obtained through the misrepresentation of the number of Off-Specification Closures, which sum is alleged to be approximately $9 million; (2) an award of the actual damages R&M has incurred in the investigation and recall of the Off-Specification Closures; (3) exemplary and punitive damages against Huber and Hoff; (4) reformation of the Stock Purchase Agreement; or (5) recission of the Stock Purchase Agreement and

---

[3] The Complaint and subsequently filed Amended Complaint invoke the diversity jurisdiction of the Court.  The respective citizenships of the parties are as follows: R&M is an Ohio corporation; Huber is a New Jersey corporation; Hoff is a Texas domiciliary; Thompson Hine is an Ohio limited liability partnership; Berkeley Forge is a California corporation.  The Stock Purchase Agreement was negotiated and executed in Texas, but the terms of the Stock Purchase Agreement are governed by New York law.

return of the consideration R&M paid to acquire FCE plus interest; and (6) a declaratory judgment that Huber must "indemnify, defend and hold harmless R&M from any and all claims, demands, causes of action, losses, liabilities, awards, judgments, costs and expenses *** arising from or relating to the sale by Huber or FCE of an undisclosed Off-Specification Closure."  Am. Compl. at 21.

Huber and Hoff in turn filed an Amended Third-Party Complaint[4] against third-party defendants Robbins & Myers Energy Systems, Inc.[5], Berkeley Forge and Tool, Inc. ("Berkeley Forge") and Thompson Hine LLP ("Thompson Hine"). Huber alone seeks indemnification and/or contribution and declaratory relief from Berkeley Forge for any liability incurred by Huber "arising from or relating to 'Off-Specification 6" Closures,' including the claims asserted by [R&M] *** and all damages that Huber may be found to owe to [R&M] either now or in the future," Am. Third-Party Compl. at 10-11, because Berkeley Forge allegedly supplied the non-conforming steel forgings used to manufacture the Off-Specification Closures. Huber and Hoff seek contribution from Thompson Hine for "any and all damages that Huber and/or Hoff may be found to owe to [R&M] either now or in the future pursuant to [R&M's negligent misrepresentation claim]," Am. Third-Party Compl. at 12-13, because, as R&M's counsel with respect to the Stock Purchase

---

[4] Huber and Hoff filed a Third-Party Complaint on October 26, 2001, but filed the Amended Third-Party Complaint on November 30, 2004 in response to R&M's Amended Complaint.

[5] Upon R&M's purchase of the stock of FCE, R&M renamed that entity and it is now known as Robbins & Myers Energy Systems, Inc.

Agreement, Thompson Hine failed to limit R&M's liability to the 194 Off-Specification Closures initially disclosed.

Pending before the Court are Thompson Hine's Motion to Dismiss, Strike or Sever and Stay the Third-Party Complaint pursuant to Rules 12(b)(6) and 14(a) of the Federal Rules of Civil Procedure ("FRCvP") and Berkeley Forge's renewed[6] Motion for Judgment on the Pleadings pursuant to FRCvP 12(c).  The motions were fully briefed, argued and submitted on March 24, 2005.

## DISCUSSION

Motions to dismiss under FRCvP 12(b)(6) and motions for judgment on the pleadings under FRCvP 12(c) are governed by the same legal criteria.  *See Patel* v. *Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see also Irish Lesbian & Gay Org.* v. *Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).  With respect to both motions, the Court is required to accept as true all well-pleaded factual allegations contained in the third-party complaint and draw all reasonable inferences in the third-party plaintiff's favor.  *See Phelps* v. *Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002).  Such motions should only be granted where it appears that the third-party plaintiff "can prove no set of facts in support of his claim which would entitle him to relief."  *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957).  Accordingly the

---

[6] Berkeley Forge previously moved for Judgment on the Pleadings in 2003, which motion was denied as moot on April 27, 2004 because R&M had been granted leave to amend its Complaint.  Berkeley Forge incorporates the arguments made in its earlier motion within this renewed motion.

Court is not concerned with whether the third-party plaintiff will ultimately prevail, but must "assess the legal feasibility of the [third-party] complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).[7]

A.   <u>Thompson Hine's Motion to Dismiss, Strike or Sever and Stay Third-Party Complaint</u>

In their Amended Third-Party Complaint, Huber and Hoff allege that, if they are liable to R&M on its claim of negligent misrepresentation, Thompson Hine is then liable to them for contribution.[8]   Huber and Hoff assert that R&M contends that it instructed Thompson Hine to limit R&M's liability to 194 Off-Specification Closures and that the Stock Purchase Agreement does not so limit R&M's liability.

Thompson Hine argues that the Amended Third-Party Complaint should be dismissed because (1) Huber and Hoff failed to obtain leave of Court to file the Third-Party Complaint as required by FRCvP 14(a) and, had leave been sought, it should have been denied due to their delay in seeking to file the Amended Third-Party Complaint and because of the prejudice to R&M should Thompson Hine be named a third-party defendant, (2) the Amended Third-Party Complaint

---

[7] The Court notes that only Berkeley Forge complied with the requirement contained in Local Rule of Civil Procedure ("LRCvP") 7.1 that motions made pursuant to FRCvP 12 and opposition thereto, be accompanied by supporting affidavits.  Ordinarily, failure to comply with LRCvP 7.1's requirements constitutes grounds for resolving the motion against the non-complying party.  However, because neither Thompson Hine nor Huber and Hoff complied with the rule, the Court can merely note their failures to comply, but cannot resolve Thompson Hine's motion on that basis.

[8] Huber and Hoff explicitly disavowed — in their papers and at oral argument — any claim for contribution for liability imposed upon them as a result of any of plaintiff's other claims.

fails to allege any tort committed by Thompson Hine, (3) the Amended Third-Party

Complaint fails to allege that Thompson Hine was a joint tortfeasor with Huber

and/or Hoff, (4) there is no privity between Thompson Hine and Huber and/or Hoff

such that Thompson Hine owes any duty to Huber and/or Hoff, (5) the statute of

limitations bars any malpractice claim against Thompson Hine and (6) Huber

and/or Hoff, as intentional tortfeasors, are not entitled to contribution or

indemnification under Texas or Ohio law.[9]

1.   Timing of Amended Third-Party Complaint

Thompson Hine argues, as an initial matter, that pursuant to FRCvP 14(a),

Huber and Hoff improperly filed their Amended Third-Party Complaint more than

10 days after filing their "original answer" without obtaining leave of Court and

thus the Amended Third-Party Complaint should be dismissed.   Third-party

practice, also known as impleader, is governed by FRCvP 14 which provides in

part:

> "(a)  At any time after the commencement of the action a defending
> party, as a third-party plaintiff, may cause a summons and complaint
> to be served upon a person not a party to the action who is or may be
> liable to the third-party plaintiff for all or part of the plaintiff's claim

---

[9] As discussed more fully *infra*, Huber and Hoff fail to identify the substantive law that gives them the right to pursue their claims for indemnification and contribution.  As a result, Thompson Hine and Berkeley Forge have been forced to speculate as to the basis for the claims asserted against them, and have addressed the law of several states in their respective motions. Thompson Hine argues based on Texas and Ohio law and Berkeley Forge addresses Texas, California and New York law.  Huber and Hoff "address Texas and Ohio law for the purpose of opposing Thompson Hine's motion, [but] do not concede that such law applies."  *See* Mem. in Opp'n at 9 n.4.  Huber and Hoff then imply that perhaps New Jersey law governs the claim against Thompson Hine.

against the third-party plaintiff.  The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer.  Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action \*\*\* ."

Leave of Court was not required in this case.  Regardless of whether or not Huber and Hoff could have sought contribution for liability imposed as a result of the fraud alleged by R&M in the original Complaint, it is undisputed that Huber and Hoff seek contribution from Thompson Hine only with respect to any liability resulting from R&M's claim for negligent misrepresentation.  Huber and Hoff could not have sought contribution for liability imposed for any negligent misrepresentation until such time as that claim was asserted against them — specifically, April 29, 2004 — when the Amended Complaint was filed.  *See Guarantee Co. of North America* v. *Pinto*, 208 F.R.D. 470, 473 (D. Mass. 2002) (recognizing that "[c]ourts have also defined 'original answer' more functionally to mean the answer that responds to the plaintiff's complaint on which the third-party claim is based").  Huber and Hoff filed their Answers to the Amended Complaint and their Amended Third-Party Complaint on November 30, 2004 and leave of Court was not required.  Furthermore, even if leave of Court had been required, the Court cannot conclude, based on the submissions before it, that leave to file an Amended Third-Party Complaint should have been or would have been denied.

- 7 -

2. <u>Substantive Propriety of Contribution Claim</u>

Thompson Hine next argues that the Amended Third-Party Complaint fails to state a claim against it because it fails to allege any tort committed by it. Thompson Hine also argues that, to the extent the Amended Third-Party Complaint purports to assert a legal malpractice claim against it, such a claim cannot succeed as a matter of law because there is no privity between Huber and/or Hoff and Thompson Hine.  In response, Huber and Hoff assert that the Amended Third-Party Complaint "provides notice of Thompson Hine's tort (negligence) ∗∗∗ ."  Mem. in Opp'n at 9.  They further assert that their claim is one for contribution based on Thompson Hine's liability *to R&M* for negligence and is not a direct claim for malpractice.

It is well-established that FRCvP 14(a) creates no substantive rights but "serves merely as a procedural device to expedite the presentation of a claim having a substantive basis in law."  *Johnson Controls, Inc.* v. *Rowland Tompkins Corp.*, 585 F. Supp. 969, 972 (S.D.N.Y. 1984).  "Impleader is permitted only when a right to relief is cognizable under the applicable substantive law." *McMillan* v. *Equifax Credit Info. Servs., Inc.*, 153 F. Supp.2d 129, 131 (D.Conn. 2001).  FRCvP 8(a) also requires a party to plead "a short and plain statement of the claim showing the pleader is entitled to relief."

As Thompson Hine argues, the Amended Third-Party Complaint fails to properly allege the substantive basis for holding Thompson Hine liable for

contribution as a joint *tortfeasor* because Huber and Hoff have failed to properly allege that Thompson Hine committed a tort against R&M.  Generally speaking, contribution is available among tortfeasors who jointly cause harm to a plaintiff. *See Pacesetter Pools, Inc.* v. *Pierce Homes, Inc.*, 86 S.W.3d 827, 831 (Tex. App. 2002); *Pinney Dock & Transp. Co.* v. *Penn Central Corp.*, 991 F. Supp. 908, 911 (N.D. Ohio 1998).

The sum total of the factual allegations in the Amended Third-Party Complaint concerning Thompson Hine's conduct is as follows:

> "40.  Thompson Hine represented R&M in conjunction with the negotiation, preparation, and execution of the Stock Purchase Agreement. ***
>
>                 *     *     *     *     *
>
> "42.  R&M also contends that it instructed Thompson Hine to limit R&M's responsibility to 'only 194 Off-Specification 6" Closures.'
>
> "43.  Despite and contrary to R&M's allegations and R&M's alleged instructions to Thompson Hine, the Stock Purchase Agreement does not limit R&M's 'responsibility' to 'only 194 Off-Specification 6" Closures.'"

Amended Third-Party Compl. ¶¶ 40, 42, 43, 46.

These allegations fail to state any cause of action in tort for which Thompson Hine could be held liable to R&M.  The Court can therefrom assume as true the following facts: that Thompson Hine represented R&M, that R&M has

made a contention about instructions to Thompson Hine,[10] and that Thompson

Hine did not follow those instructions.  Assuming, as Huber and Hoff propound,

that the relevant tort is negligence, the Amended Third-Party Complaint is devoid

of any allegations of fact which, if assumed true, would establish the essential

elements of a negligence claim — specifically the elements of causation and harm.

*See Hudiburg Chevrolet, Inc.* v. *Gen. Motors Corp.*, 114 S.W.3d 680, 685 (Tex. 2003);

*Armstrong* v. *Best Buy Co., Inc.*, 788 N.E.2d 1088, 1090 (Ohio 2003) (stating that

required elements of a negligence claim are duty, breach thereof, causation and

harm).

Furthermore, if Huber and Hoff actually contend that Thompson Hine was

negligent *in its representation of R&M*, the appropriate tort would then be legal

malpractice not negligence.  *See Aiken* v. *Hancock*, 115 S.W.3d 26, 28-29 (Tex.

2003), and *Muir* v. *Hadler Real Estate Mgmt. Co.*,446 N.E.2d 820, 822-823 (Ohio Ct.

App.1982) (stating that claim for damages resulting from manner in which

attorney represented client is malpractice regardless of theory advanced).  The

Amended Third-Party Complaint likewise fails to properly allege a malpractice

claim.

─────────────────────

[10] From the phrasing of the Amended Third-Party Complaint, the Court can only assume
as true the allegation that R&M has made a contention that it gave an instruction to Thompson
Hine.  The Court cannot assume for purposes of this motion that R&M *actually gave* an instruction
to Thompson Hine.  Moreover, the Court can discern no such contention contained in R&M's
Amended Complaint; however, for purposes of this motion, the Court assumes Huber's and Hoff's
allegation as true.

Under the law of both Texas and Ohio, an attorney is liable for malpractice only upon a showing that his representation of his client failed to comport with applicable standards. *See Veschi* v. *Stevens*, 861 S.W.2d 291, 292-93 (Tex. 1993) (breach of a duty is shown by failure to meet "the standard of care that would be exercised by a reasonably prudent attorney"); *see also Vahila* v. *Hall*, 674 N.E.2d 1164, 1169 (Ohio 1997) (a malpractice plaintiff must show "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law ∗∗∗"). Absent from the Amended Third-Party Complaint is any allegation that Thompson Hine's conduct failed to comport with applicable standards. Also absent is any allegation that such a conduct was the cause of any harm to R&M. As Huber and Hoff fail to allege facts which, if proven, would establish that Thompson Hine is a tortfeasor and thus subject to liability for contribution, Thompson Hine's motion to dismiss the Amended Third-Party Complaint for failure to state a claim will be granted.

As Huber and Hoff note, however, when a claim is dismissed because of inadequate pleading, leave to amend is generally granted. FRCvP 15 states that leave to amend should be freely granted "when justice so requires." In determining whether to grant leave to amend, the Court considers (1) whether the amendment is proposed in good faith, (2) whether it would cause undue delay, (3) whether the amendment would prejudice the opposing party, (4) whether the

pleading has previously been amended and (5) whether amendment would be futile.  *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962).  Based upon a review of these considerations, the Court concludes that leave to replead should be granted.

The Court cannot conclude that any such amendment would be futile because Thompson Hine has failed to demonstrate that, as a matter of law, a third-party plaintiff cannot seek contribution from the claimant's attorney.  None of the cases cited by Thompson Hine establish, as a matter of law, that a defendant may not bring a third-party action against the plaintiff's attorney when the defendant claims that the attorney's malpractice together with the defendant's negligence contributed to the injury to the plaintiff.  In *50-Off Stores* v. *Banque Paribas (Suisse), S.A.*, 1997 WL 790739, at *13 (W.D.Tex. 1997), the court dismissed the contribution claim against plaintiff's counsel because, under Texas law at that time, the third-party plaintiff could not seek contribution for liability imposed for the intentional torts of which it was accused.  Here, in contrast, Huber and Hoff do not seek contribution for any liability imposed for the intentional torts alleged against them.  In *Muir* v. *Hadler Real Estate Management Co.*, 446 N.E.2d 820, 822-823 (Ohio Ct.App. 1982), and *United States Fidelity and Guaranty Co.* v. *Pietrykowski*, 2000 WL 204475, at *3-*4 (Ohio App. 2000), the third-party contribution claims were dismissed because the third-party plaintiff sought contribution from *his own* attorney based on the attorney's malpractice. The *Muir* and *United States Fidelity* courts stated that, when a party seeks

damages from its own attorney, the cause of action is one for legal malpractice and cannot be stated as a claim for contribution. *See Muir*, at 822; *United States Fidelity*, at *4. *Muir* and *United States Fidelity* are inapplicable here as, undisputedly, neither Huber nor Hoff was represented by Thompson Hine and cannot state a claim for legal malpractice against Thompson Hine. Thompson Hine has failed to demonstrate that a claim for contribution by Huber and/or Hoff cannot be maintained against it as a matter of law.

Nor can the Court conclude that the amendment would cause undue delay or prejudice to R&M or Thompson Hine because both Thompson Hine and R&M have been aware that the firm's conduct in negotiating and drafting the Stock Purchase Agreement could be raised at trial as a defense to R&M's claims against Huber and Hoff. Moreover, it is entirely foreseeable that Thompson Hine's conduct — particularly with respect to the representations Huber and Hoff made to it and its response to these representations — could be raised either *by R&M* in its efforts to show its reasonable reliance on the representations allegedly made by Huber and Hoff or by Huber and Hoff to show lack of reasonable reliance.

Accordingly, Thompson Hine's motion to dismiss the Amended Third-Party Complaint for failure to state a claim is granted and Huber and Hoff are granted leave to replead their claim against Thompson Hine only insofar as it seeks

contribution for liability imposed as a result of R&M's negligent misrepresentation claim.[11]

B.   Berkeley Forge's Motion for Judgment on the Pleadings

In its third-party claim against Berkeley Forge, Huber alleges that Berkeley Forge supplied Huber and/or FCE with the steel forgings used to manufacture the Off-Specification Closures at issue.   Huber contends that, although the steel forgings were accompanied by documentation attesting to their compliance with the LF2 Specification, the forgings actually failed to so comply.   Huber seeks indemnification and/or contribution from Berkeley Forge for any damages or declaratory relief R&M obtains against Huber on any of R&M's claims because Berkeley Forge "caused" the Off-Specification Closures issue by supplying non-conforming steel forgings.   *See* Huber's Mem. in Opp'n at 1.

Third-party defendant Berkeley Forge moves pursuant to FRCvP 12(c) for judgment on the pleadings asserting that, if Huber is found liable to R&M on any of the claims asserted in the Amended Complaint, there is no basis for holding Berkeley Forge liable to Huber.   Berkeley Forge contends that, under the laws of any potentially applicable jurisdiction,[12] Huber cannot obtain indemnification or

---

[11] As discussed *supra*, in amending their claim for contribution as to Thompson Hine, Huber and Hoff should also clearly identify the source of law on which they are relying for their right to claim contribution.

[12] As noted *supra,* Berkeley Forge's motion addresses Texas, Ohio and California law because Huber does not identify the law on which it relies for its claims of indemnification and contribution.

contribution because such is not available for liability based on intentional torts and because Berkeley Forge is not a joint tortfeasor with Huber such that it may be liable for indemnification or contribution based on Huber's negligence. Finally, Berkeley Forge contends that the fifth count of the Amended Third-Party Complaint should be dismissed because it seeks declaratory relief which is a remedy, not a legal cause of action. For the reasons that follow, Berkeley Forge's motion will be granted.

The Amended Third-Party Complaint alleges, with respect to Berkeley Forge, that:

> "31. In order to manufacture certain closure products, the Flow Control Division, and subsequently FCE, Inc., purchased closed die steel forgings from third party suppliers, including six-inch closed die steel forgings that were purchased from Berkeley Forge.
>
> "32. Beginning in or about 1993, Berkeley Forge began to supply closed die steel forgings to the Flow Control Division and, in conjunction with supplying certain of these forgings, Berkeley Forge provided the Flow Control Division with certificates of conformance and material test reports confirming that the forgings met the specifications of SA350LF2 steel.
>
> "33. Huber manufactured certain closure products using six-inch steel forgings purchased from Berkeley Forge in reliance upon certificates of conformance and material test reports provided by Berkeley Forge stating that such forgings met the specifications of SA350LF2 steel.
>
> "34. On information and belief, the 'Off-Specification 6" Closures' defined in R&M's First Amended Complaint were manufactured from forgings supplied by Berkeley Forge.

"35.   Huber denies that R&M has incurred or will incur any damages relating to so-called 'Off-Specification Closures' and, therefore, Huber has denied that an actual and justiciable controversy exists between Huber and R&M regarding 'Off-Specification Closures' and that Huber owes R&M any damages associated with the 'Off-Specification Closures.'

"36.   If the Court determines that an actual and justiciable controversy exists between Huber and R&M regarding the Off-Specification Closures, as alleged in Count V of R&M's First Amended Complaint, then an actual and justiciable controversy exists between Huber and Berkeley Forge because Berkeley Forge provided the forgings which are claimed by R&M to have failed to meet the specifications SA350LF2.

"37.   Pursuant to 28 U.S.C. §2201(a) and the equitable power of the Court, Huber seeks a declaration that Berkeley Forge must indemnify, defend, and hold Huber harmless from any and all third-party claims, demands, causes of action, losses, liabilities, awards, judgments, costs and expenses of any nature arising from or relating to 'Off-Specification 6" Closures' including any and all damages which Huber is required to pay at the conclusion of this litigation or in the future as a result of the 'Off-Specification 6" Closures.'

"38.   Pursuant to common law principles of contribution and indemnification, Huber also seeks contribution and/or indemnification from Berkeley Forge for any and all damages that Huber may be found to owe to R&M."

Am. Third-Party Compl. ¶¶ 31-38.

Huber's Amended Third-Party Complaint must be dismissed as to Berkeley Forge.  As noted above, FRCvP 14(a) is only a procedural rule whereby a party may assert claims having some other basis in law.  No such basis in law is alleged here.  Huber contends that its entitlement to contribution and/or indemnification arises from "common law principles."  Such contention begs the question — *what*

common law principles?   Huber fails to identify the substantive law which entitles it to the right of indemnification and/or contribution.   Although Berkeley Forge, in an effort to have the claims dismissed on their merits, addresses the law of several jurisdictions on which Huber *may* be relying, the Court concludes that it is incumbent upon Huber to state in the first instance the source of the rights it seeks to enforce.

Additionally, Huber has likewise failed to allege the legal theory by which Berkeley Forge would be liable for indemnification or contribution.   Absent from the Amended Third-Party Complaint is any clearly asserted negligence, strict products liability, breach of warranty or breach of contract which contributed to the injury for which R&M seeks to recover from Huber and for which Berkeley Forge would be subject to liability for indemnification or contribution.   Therefore, the Court concludes that Berkeley Forge's motion for judgment on the pleadings should be granted.

As noted *supra*, in determining whether to grant leave to amend, the Court considers (1) whether the amendment is proposed in good faith, (2) whether it would cause undue delay, (3) whether the amendment would unduly prejudice the opposing party, (4) whether the pleading has previously been amended and (5) whether amendment would be futile.   *See Foman* v. *Davis*, 371 U.S. 178, 182 (1962).   The Court cannot conclude, based on the pleadings, that amendment would be futile, that Berkeley Forge would be prejudiced by allowing leave to

replead or that leave to replead would cause undue delay. The Court does conclude, however, that to allow Huber to assert a third-party claim against Berkeley Forge would create unnecessary confusion during the trial of the primary claim and would likely cause undue prejudice to R&M.[13]

FRCvP 42(b) allows the Court to order a separate trial of a third-party claim "in furtherance of convenience or to avoid prejudice." The same factors are evaluated whether the Court is considering a severance of plaintiff's claims under FRCvP 21 or separate trials under FRCvP 42. *See Hecht* v. *City of New York*, 217 F.R.D. 148, 150 (S.D.N.Y. 2003). The factors to be considered are: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of fact or law; (3) whether severance would serve judicial economy; (4) prejudice to the parties caused by severance; and (5) whether the claims involve different witnesses and evidence." *In re Zyprexa Prods. Liab. Litig.*, 2004 WL 2812095, at *2 (E.D.N.Y. 2004). Unlike Thompson Hine, Berkeley Forge played no role in the negotiation or execution of the Stock Purchase Agreement at issue in the primary claim. Any conduct by Berkeley Forge occurred well before R&M and Huber entered into negotiations. The central issue in the primary claim is whether or not Huber and/or FCE adequately disclosed the existence of the Off-Specification Closures. The fact that the Off-

---

[13] Even if such confusion and potential prejudice was not sufficient to deny leave to replead, such certainly would be sufficient to sever Huber's third-party claim and stay such claim pending the resolution of R&M's claims against Huber and Hoff. *See* FRCvP 42(b).

Specification Closures did not comply with the LF2 Specification is not disputed, and how the Off-Specification Closures came to be is irrelevant to the primary claim.  The witnesses and evidence necessary to establish Huber's liability to R&M are completely different from the witnesses and evidence necessary to establish Berkeley Forge's liability, if any, to Huber.  The Court concludes that the combined trial of the primary claim and of the third-party claim against Berkeley Forge would result in great confusion for the jury.  Finally, the Court concludes that the risk of prejudice, particularly the risk of inconsistent verdicts, as to Huber is minimal and any risk does not outweigh the risk of confusion of the jury and prejudice to R&M.

Nevertheless, Huber may be entitled to contribution and/or indemnification on some theory under the laws of some jurisdiction.  Therefore, this dismissal is without prejudice to Huber's ability to replead its claim to seek relief in this or any other Court of competent jurisdiction.

Accordingly, it is **ORDERED** that Thompson Hine's and Berkeley Forge's respective motions pursuant to FRCvP 12(b)(6) and 12(c) are granted without prejudice, that Huber is granted leave to replead its third-party claim against Thompson Hine and must do so no later than  December 1, 2005 and that Huber is denied leave to replead in this action its claim against Berkeley Forge.

DATED:       Buffalo, N.Y.

             October 25, 2005


                                    _____
                                          /s/ John T. Elfvin
                                    JOHN T. ELFVIN
                                    S.U.S.D.J.