FILED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

2007 SEP 28 AM 11: 45

U.S. DISTRICT COURT
W.D.N.Y. - BUFFALO

ROBBINS & MYERS, INC.,

01-CV-0201E

Plaintiff,

MEMORANDUM

-vs-

and

J.M. HUBER CORPORATION and
H. MILTON HOFF,

ORDER[1]

Defendants and Third-Party
Plaintiffs

-vs-

ROBBINS & MYERS ENERGY SYSTEMS, INC. and
THOMPSON HINE LLP,

Third-Party Defendants.

## INTRODUCTION

This action arises out of plaintiff Robbins & Myers, Inc.'s ("R&M") purchase

of the assets of Flow Control Equipment, Inc. ("FCE"), a wholly-owned subsidiary

of the defendant, J.M. Huber Corporation ("Huber"), pursuant to a Stock Purchase

Agreement entered into in November 1997. During negotiations for the stock

purchase agreement, Huber made various representations to R&M and R&M's

counsel, Thompson Hine LLP ("Thompson Hine"), concerning FCE and its

---

[1]This decision may be cited in whole or in any part.

1

outstanding liabilities. Huber disclosed that Huber and/or FCE had manufactured and sold 194 potentially defective closures (the "Off-Specification Closures")[2] from steel which did not meet Huber's normal specifications. Sometime after the Stock Purchase Agreement was executed, defendant H. Milton Hoff ("Hoff"), the former President of FCE, revealed to R&M that the number of such Off-Specification Closures was actually much larger than 194, and that such Off-Specification Closures numbered in the thousands. The parties dispute whether Huber and Hoff disclosed the possibility of additional Off-Specification Closures prior to the agreement's completion.

On March 22, 2001, R&M filed a Complaint[3] alleging that Huber and Hoff had intentionally misrepresented the number of Off-Specification Closures which had been sold by Huber and/or FCE and that, had R&M known the true extent of the Off-Specification Closure problem, it never would have entered into the Stock Purchase Agreement. R&M alleged that Huber and Hoff fraudulently induced R&M to enter into the Stock Purchase Agreement, committed statutory fraud in

---

[2] Closure Products consist of "hubs" and "caps" which are combined and "welded to tubular openings so as to provide access to those tubes, such as boilers, other pressure vessels and gas and oil pipelines. Closure Products are often used to clean and perform maintenance inside pipelines." Am. Compl. ¶6, Dkt. #95.

[3] The Complaint and subsequent Amended Complaint invoke the diversity jurisdiction of the Court. The respective citizenship of the parties are as follows: R&M is an Ohio corporation; Huber is a New Jersey corporation; Hoff is a Texas domiciliary; Thompson Hine is an Ohio limited liability partnership; Berkeley Forge is a California corporation. The Stock Purchase Agreement was negotiated and executed in Texas but the terms of the Stock Purchase Agreement are governed by New York law.

violation of Texas law and violated Texas Securities Law. On April 28, 2004 R&M filed an Amended Complaint adding a claim for negligent misrepresentation as well as additional factual allegations. R&M seeks (1) disgorgement of the unjust enrichment Huber and Hoff obtained through the misrepresentation of the number of Off-Specification Closures, including the amount by which R&M's purchase price exceeded other offers, which sum is alleged to be approximately $9 million; (2) an award of the actual damages R&M has incurred in the investigation and recall of the Off-Specification Closures; (3) exemplary and punitive damages against Huber and Hoff; (4) reformation of the Stock Purchase Agreement; (5) rescission of the Stock Purchase Agreement and return of the consideration R&M paid to acquire FCE, plus interest; and (6) a declaratory judgment that Huber must "indemnify, defend and hold harmless R&M from any and all claims, demands, causes of action, losses, liabilities, awards, judgments, costs and expenses ... arising from or relating to the sale by Huber or FCE of an undisclosed Off-Specification Closure." Amended Complaint at 21.

Huber and Hoff in turn filed a Second Amended Third-Party Complaint[4]

---

[4] Huber and Hoff filed a Third-Party Complaint on October 26, 2001, but filed an Amended Third-Party Complaint on November 30, 2004 in response to R&M's Amended Complaint. On October 28, 2005 the Court granted Thompson Hine's and Berkeley Forge's motions to dismiss the Amended Third Party Complaint. The Court also granted Huber and Hoff leave to replead as to Thompson Hine and on November 30, 2005 the Second Amended Third Party Complaint was filed.

3

against third-party defendants Robbins & Myers Energy Systems, Inc.[5] and

Thompson Hine, the law firm that represented R&M in the stock purchase

agreement. Huber and Hoff seek contribution from Thompson Hine on the basis

that

> "[i]n the event it is determined that Huber and/or Hoff negligently
> misrepresented any facts concerning "Off-Specification Closures" and
> that such negligence caused any damages to R&M, such damages
> were caused by Thompson Hine, in whole or in part, based on
> Thompson Hine's negligence and/or legal malpractice in failing to
> limit R&M's liability to 194 "Off-Specification Closures" in the Stock
> Purchase Agreement and to otherwise limit the costs and potential
> liabilities to R&M relating to "Off-Specification Closures."

Second Amended Third Party Complaint at ¶ 50, Dkt. #135.

Pending before the Court is Thompson Hine's Motion to Dismiss the Second

Amended Third Party Complaint or, in the Alternative, for Summary Judgment.[6]

## DISCUSSION

When considering a motion to dismiss under Federal Rules of Civil Procedure

("FRCvP") 12(b)(6), the Court is required to accept as true all well-pleaded factual

allegations contained in the third-party complaint and draw all reasonable

---

[5] Upon R&M's purchase of the stock of FCE, R&M renamed FCE and it is now known
as Robbins & Myers Energy Systems, Inc.

[6] The Motion pertains only to the contribution claim made against Thompson Hine and
does not pertain to the claim for indemnification made against Robbins & Myers Energy
Systems. Contrary to Huber's and Hoff's characterization, the instant Motion is not a
"renewed" motion but is in fact a new Motion pertaining to the most recently filed Second
Amended Third Party Complaint.

4

inferences in the third-party plaintiff's favor. *See Phelps* v. *Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). Such motions should only be granted where it appears that the third-party plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "While a complaint attacked by a [FRCvP] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.* v. *Twombly*, – U.S. – , 127 S. Ct. 1955, 1964-65 (2007) (internal citation and quotation omitted). Accordingly the Court is not concerned with whether the third-party plaintiff will ultimately prevail, but must "assess the legal feasibility of the [third-party] complaint." *Cooper* v. *Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

Summary judgment pursuant to FRCvP 56, on the other hand, is appropriate only where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In making such a determination, a court must view the facts in the light most favorable to the non-moving party and any doubts as to the existence of a genuine issue for trial should be resolved against the moving party. *See St. Pierre* v. *Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (*citing Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

The moving party bears the initial burden of establishing that no genuine issue as to a material fact exists. *See Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323

5

(1986). Once the moving party establishes its initial burden, the non-moving party

must set forth specific facts showing that there is a genuine and material issue for

trial. *See Anderson*, 477 U.S. at 250.

> ### Thompson Hine's Motion to Dismiss the Second Amended Third
> ### Party Complaint, or, in the Alternative, for Summary Judgment

In their Second Amended Third-Party Complaint, Huber and Hoff allege that,

if they are liable to R&M on its claim of negligent misrepresentation, then

Thompson Hine is liable to them for contribution.   Huber and Hoff assert that

Thompson Hine, as legal counsel, had various duties to R&M — among which was

to limit R&M's liability for Off-Specification Closures to 194 such Closures — and,

as a result of its breach of those duties by failing to include such a limitation in the

Stock Purchase Agreement, Thompson Hine contributed to the harm for which

R&M seeks to recover from Huber and Hoff.  Thus, Huber and Hoff contend that

Thompson Hine is jointly liable for some of the harm alleged by R&M.  Specifically,

Huber and Hoff allege that

> "By failing to include a representation limiting R&M's liability to 194
> "Off-Specification Closures" in the Stock Purchase Agreement and by
> otherwise failing to address R&M's alleged intention to limit the costs
> and potential liabilities to R&M relating to the "Off-Specification
> Closures," Thompson Hine failed to comport with the standard of care
> applicable to a similarly situated attorney and therefore breached its
> duty to R&M."

Second Amended Third Party Compl. ¶ 41, Dkt. #135.  Huber and Hoff also clarify

that their "contribution claim is based on Thompson Hine's admission that it failed

6

to include Defendants' alleged misrepresentations regarding "Off-Specification Closures" in the Stock Purchase Agreement between the parties and was therefore negligent or committed legal malpractice that contributed to the harm for which R&M seeks to recover." Defendants' Opp'n Memo. at 1, Dkt. #145. Finally, Huber and Hoff expressly note that their claim for contribution is not predicated on a contention that Thompson Hine had a duty to investigate and uncover their alleged misrepresentations.

Thompson Hine argues that the Second Amended Third-Party Complaint should be dismissed because, *inter alia*, (1) Huber and Hoff fail to state a claim for which relief can be granted because, as non-clients of Thompson Hine, they have no right to sue for contribution; (2) any negligence on the part of Thompson Hine is attributable to R&M under the principles of agency law; (3) the contribution claim is duplicative of defendants' affirmative defense of comparative negligence and (4) Thompson Hine is not a joint tortfeasor with Huber and/or Hoff.

Third-party practice is governed by FRCvP 14. It provides in part that

"At any time after the commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff ... ."

FRCvP 14(a). Huber and Hoff seek contribution from Thompson Hine only if either or both is found liable to R&M on its negligent misrepresentation claim. R&M asserts that, but for Huber and/or Hoff's negligent misrepresentations as to the

7

extent of the Off-Specification Closure problem, it would not have entered into the subject transaction. For Huber and/or Hoff to be liable on such a claim, R&M must prove that a) Huber and/or Hoff represented to R&M or Thompson Hine that the Off-Specification Closure problem was limited to 194 such closures, b) such representation was untrue, c) Huber and/or Hoff made such representation negligently, d) R&M reasonably relied on that representation and e) R&M has incurred an injury as a result.[7]

Huber and Hoff purport to assert that, if R&M demonstrates the above principles, then Thompson Hine is also liable for a portion of any such injury because by failing to explicitly limit R&M's liability to 194 such closures as represented to it by Huber and/or Hoff, Thompson Hine breached its duty to R&M to perform legal services in accordance with applicable standards. Huber and

---

[7]The parties have not clearly identified the law that they believe applies other than to suggest that the relevant law is that of either New York, Ohio, or Texas. However, neither party has identified a conflict among these states for purposes of this motion and this Court has not discovered any relevant conflicts between the states. Under Texas law, the elements of a claim for negligent misrepresentation are: "(1) a defendant provides information in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the information supplied is false; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; (4) the plaintiff justifiably relies on the information; and (5) the plaintiff suffers damages proximately caused by the reliance." *Larsen* v. *Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249-50 (Tex. App.-Waco 2001) (*citing Federal Land Bank Ass'n.* v. *Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). Similarly, under Ohio law, the claim of negligent misrepresentation is defined as "[o]ne who, in the course of his business ... or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman* v. *Cleveland Hts.*, 41 Ohio St.3d 1, 4 (1991). New York law is largely the same and also requires justifiable reliance for a negligent misrepresentation claim. *See Kimmel* v. *Schaefer*, 89 N.Y.2d 257, 263 (N.Y 1996).

8

Hoff's Second Amended Third Party Complaint and opposition memorandums fail to identify any legal authority for the proposition that failure to include a contract provision covering each and every representation made to a client violates an applicable standard of practice. Instead, Huber and Hoff rely on an "admission" that (in light of the current litigation), it would have been "preferable" for Thompson Hine to have explicitly stated such representations.

Huber and Hoff fail to recognize, however, that Thompson's Hine negligence, if proven, would negate the justifiable reliance element of R&M's misrepresentation claims. Under the facts of this case, whether Thompson Hine should have included a contractual limitation has no legal consequence to Huber and Hoff. Huber and Hoff's liability turns on what they disclosed and whether R&M's reliance on such disclosures was justifiable. If the factfinder agrees that Huber and Hoff adequately disclosed the existence of the Off-Specification Closure problem to either R&M or Thompson Hine, R&M will not succeed in its claim because it cannot establish justifiable reliance.

Much of the confusion in this current dispute is a result of the fact that Huber and Hoff allegedly made some of the disclosures regarding the Off-Specification Closures to Thompson Hine. Huber and Hoff allege that, during negotiations of the stock purchase agreement, one of Huber's attorneys told Thompson Hine of the

existence of several thousand Off-Specification Closures.[8] Assuming the factfinder agrees with this version of events, Thompson Hine's knowledge of this disclosure will be imputed to R&M under agency principles and R&M's claim for negligent misrepresentation will fail.[9]

The agency principles at work in this case closely parallel those present in *New York Islanders Hockey Club, LLP* v. *Comerica Bank-Texas*, 115 F. Supp. 2d 348 (E.D.N.Y. 2000). In *New York Islanders,* the Islanders hockey club brought a suit against Comerica Bank asserting fraud and negligent misrepresentation arising from a fraudulent scheme to purchase the hockey club by John Spano, a Comerica Bank customer. After the Islanders were approached by Spano, who expressed interest in purchasing the hockey club, the Islanders inquired into Spano's ability to pay the nearly \$100 million asking price. In response, Comerica Bank sent a letter to the Islanders stating that Spano had the financial means to purchase the team. As a result of this letter and other misrepresentations, the Islanders sold the hockey club to Spano, who the Islanders later discovered had no significant financial assets. The Islanders then sued Comerica Bank, alleging that Spano caused \$10 million in damages to the hockey club and that Comerica Bank was

---

[8] *See* Schlimbach Deposition, at 102:14 to 103:12, Exhibit B to Sager Declaration, Dkt. #145-7.

[9] If the factfinder reaches this conclusion, R&M itself might then have a legal malpractice claim against Thompson Hine because Thompson Hine will have had knowledge of the problem and arguably should then have limited R&M's liability under the stock purchase agreement or advised R&M to decline entering into the agreement. However, this is irrelevant to Huber and Hoff's current contribution claim.

liable for fraud and negligent misrepresentation. Comerica Bank responded by filing a third-party complaint for contribution against the Islanders' law firm, alleging, among other things, that the law firm failed to act with due diligence in regard to Spano's finances prior to the sale. In its complaint, Comerica contended that the Islanders' law firm's legal malpractice contributed to the Islanders' damages, and thus, the law firm may be partially or wholly liable for any judgement obtained by the Islanders against Comerica Bank.

The district court dismissed Comerica's third-party complaint based on agency principles. The court held that the Islanders were bound by the acts and omission of its law firm and would suffer the consequences of missteps made by the law firm. *Id.* at 351. The court based this holding on the fact that the law firm's negligence would be attributed to the Islanders and, if proven, would prevent the hockey club from succeeding on its claims for fraud and negligent misrepresentation because the law firm's negligence would negate the element of justifiable reliance. *Id.* at 352.

The present case bears considerable similarities and this Court finds the Eastern District court's reasoning to be persuasive. As in *New York Islanders*, R&M filed suit for fraud and negligent misrepresentation and the defendants responded with a third-party complaint seeking contribution from the plaintiff's law firm for alleged negligence. Also as in New York Islanders, Thompson Hine's alleged negligence, if proven, would prevent R&M from establishing the justifiable

11

reliance element of its misrepresentation claims.

Huber and Hoff argue that the present case is distinguishable because "unlike in New York Islanders, the Third-Party Complaint against Thompson Hine is not based on a failure to discover what it and R&M now claim was misrepresented." Instead, Huber and Hoff argue that "the Third-Party Complaint is based on Thompson Hine's negligence in failing to carry out R&M's desire to confirm that the "Off-Specification Closure" issue was limited to no more than 194 certified closures and that the issue could be addressed at minimal cost." Defendants' Opp'n Memo. at 21, Dkt. #145.

This Court disagrees with the premise that "a failure to discover" and a "failure to confirm" is a valid distinction. Thompson Hine would only be obligated to "confirm" that the Off-Specification Closures problem was limited to 194 such closures if Huber and Hoff had already made that representation. One cannot "confirm" something that has yet to be discovered.

Defendants also argue against dismissal on the grounds that the standard of care in negligence or malpractice actions is different than the standard for justifiable reliance. While this Court agrees that it in some situations it could be theoretically possible for lawyers to have justifiably relied on misrepresentations, but that such reliance, without confirmation, could also constitute negligence or legal malpractice, this case does not present facts where the difference in standards is relevant. Simply put, if Huber and Hoff fully disclosed the extent of the

12

Off-Specification Closures during negotiations, as it claims, then it is not liable for misrepresentation and whether Thompson Hine should have confirmed or limited R&M's liability is only relevant to whether R&M can seek a malpractice claim against Thompson Hine in a separate proceeding.

The Court finds that Huber and Hoff's third-party complaint fails to state a claim for contribution because the allocation of proof on R&M's claim against Huber and Hoff fully protects Huber and Hoff from any negligence committed by Thompson Hine. This Court need not consider Thompson Hine's other arguments because this holding disposes of Huber and Hoff's contribution claim.

Accordingly, it is hereby ORDERED that third-party defendant Thompson Hine's motion to dismiss the second amended complaint is granted with respect to defendants' contribution claim and third-party defendant Thompson Hine's motion for summary judgment is denied as moot.

DATED:     Buffalo, N.Y.
           September 28, 2007

                                        _____
                                        JOHN T. ELFVIN
                                        S.U.S.D.J.

13