UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBBINS & MYERS, INC.,

                            Plaintiff/
                 Counterclaim Defendant,

        v.

J.M. HUBER CORPORATION and
H. MILTON HOFF,

              Defendants/Counterclaimants/
                Third-Party Plaintiffs,

        v.

ROBBINS & MEYERS ENERGY SYSTEMS, INC.,
BERKELEY FORGE & TOOL, INC., and
THOMPSON HINE LLP,

                Third-Party Defendants.

_____

**DECISION**
**and**
**ORDER**

**01-CV-00201S(F)**

APPEARANCES:        THOMPSON HINE LLP
                       Attorneys for Plaintiff/Counterclaim Defendant
                        And Third-Party Defendant
                       LESLIE W. JACOBS,
                       MATTHEW E. LIEBSON,
                       KENNETH G. COLE, and
                       LUKE L. DAUCHOT, of Counsel
                       3900 Key Center
                       127 Public Square
                       Cleveland, Ohio 44114-1291

                       HODGSON RUSS LLP
                       Attorneys for Plaintiff/Counterclaim Defendant
                        And Third-Party Defendant
                       JEFFREY C. STRAVINO, and
                       ROBERT J. LANE, JR., of Counsel
                       The Guaranty Building, Suite 100
                       140 Pearl Street
                       Buffalo, New York 14202-4040

DAY PITNEY LLP
Attorneys for Defendants/Counterclaimants/
  Third-Party Plaintiffs
DAVID S. SAGER,
DENNIS LaFIURA, and
ELIZABETH J. SHER, of Counsel
P.O. Box 1945
Morristown, New Jersey 07962-1945

PHILLIPS LYTLE LLP
Attorneys for Defendants/Counterclaimants/
  Third-Party Plaintiffs
EDWARD S. BLOOMBERG, of Counsel
3400 HSBC Center
Buffalo, New York 14203

## JURISDICTION

This action was referred to the undersigned by Honorable William M. Skretny on

December 5, 2007, for determination of non-dispositive motions. The matter is

presently before the court on Defendants' application for attorney's fees and costs

awarded pursuant to Fed.R.Civ.P. 37 (Doc. No. 297).[1]

---

[1] The Second Circuit Court of Appeals considers the award of monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders a nondispositve matter reviewable by the district judge under the "clearly erroneous or contrary to law" standard. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

## BACKGROUND and FACTS[2]

Plaintiff Robins & Myers, Inc. ("R&M" or "Plaintiff"), commenced this fraud action on March 22, 2001, seeking to recover monetary damages allegedly incurred by R&M in connection with its 1997 purchase of Flow Control Equipment, Inc. ("FCE"), a wholly-owned subsidiary of Defendant J.M. Huber Corporation ("Huber"), of which Defendant H. Milton Hoff ("Hoff"), was president (together, "Defendants"). Following its purchase, R&M changed FCE's name to Robbins & Meyers Energy Systems, Inc. ("R&MES"). On October 26, 2001, Defendants commenced a third-party action against R&MES, R&M legal counsel Thompson Hine, and Berkely Forge and Tool, Inc. ("Berkeley Forge") (together, Third Party Defendants").

In a Decision and Order filed June 24, 2010 (Doc. No. 292) ("D&O"), the undersigned granted Defendants' motions for sanctions filed September 18, 2009 (Doc. No. 247) ("first sanctions motion"), and February 24, 2010 (Doc. No. 275) ("second sanctions motion") (together, "the sanctions motions"), and Defendants were given ten days within receipt of the D&O to file affidavits of costs and attorneys' fees incurred in connection with both the sanctions motions, as well as for the February 18, 2010 deposition of Gary R. Owens, Esq. ("Owens"), and to redepose Owens. Accordingly, on July 6, 2010, Defendants filed the Affidavit of Edward S. Bloomberg, Esq. ("Bloomberg") (Doc. No. 293) ("Bloomberg Affidavit"), and the Declaration of David S. Sager, Esq. ("Sager") (Doc. No. 294) ("Sager Declaration"), seeking a total award of $ 34,555 for both sanctions motions.

---

[2] The Facts are taken from the pleadings and motion papers filed in this action.

In opposition, Plaintiff filed on July 16, 2010 a response (Doc. No. 296) ("Plaintiff's Response"), opposing Defendants' submissions as unaccompanied by any documentation supporting the claimed hours or establishing the hourly rates charged are reasonable and consistent within the local, *i.e.*, Buffalo area, legal community. Plaintiff also requested clarification whether the costs awarded for redeposing Owens includes attorney fees. In a Decision and Order filed August 31, 2010 (Doc. No. 298), the undersigned held the affidavits Defendants filed in support of the attorney fees application were insufficient, directed Defendants to file supplemental affidavits within ten days, and clarified the costs awarded for redeposing Owens includes attorney fees.

On September 10, 2010, Defendants filed the Supplemental Declaration of Edward Bloomberg Submitted Pursuant to the Court's Decision and Order Dated August 31, 2010 (Doc. No. 299) ("Bloomberg Supplemental Declaration"), attached to which as exhibit A are redacted copies of invoices to Defendants for services rendered by local counsel Phillips Lytle LLP with regard to the action (Doc. No. 299-2) ("Phillips Lytle Invoices"), Defendants' Memorandum in Support of Application for Fees and Costs (Doc. No. 300) ("Defendants' Memorandum"), attached to which as exhibit 1 is the Supplemental Declaration of David S. Sager Pursuant to the Court's Decision and Order Dated August 31, 2010 (Doc. No. 300-2) ("Sager Supplemental Declaration"), with attached exhibits A through D ("Defendants' Exh(s). __"). On September 20, 2010, Plaintiff filed the Opposition to Defendants' (Second) Application for Fees and Costs (Doc. No. 303) ("Plaintiff's Memorandum"), with attached exhibits 1 through 7 ("Plaintiff's Exh(s). __"). In total, Defendants seek $ 37,882,70 in attorney's fees, and $

2,658.83 in costs, for a total award of $ 40, 541.53.[3]  Oral argument was deemed

unnecessary.

Based on the following, Defendants' application for attorneys' fees is GRANTED.

## DISCUSSION

As stated, Defendants were awarded attorneys fees and costs incurred in

preparing the sanctions motions, and in connection with the February 18, 2010

deposition of Owens, and a re-deposition of Owens, as a sanction pursuant to

Fed.R.Civ.P. 37(b)(2)(C) ("Rule 37"), and Defendants were directed to file affidavits of

costs and attorney's fees relevant to the determination of the sanctions award.  D&O at

31-32.  Defendants submitted affidavits seeking attorney's fees for four attorneys who

worked on the sanctions motions and participated in the February 18, 2010 deposition

of Owens, seeking a total of $ 37, 882.70 in attorney's fees, and $ 2,658.83 in costs.

The hourly rates for each of the four attorneys increased between 2009, when

the first sanctions motion was filed, and 2010 when Owens was deposed, the second

sanctions motion was filed, and objections filed with regard to the D&O in 2010 were

resolved.  The following schedule lists the hours each attorney worked at the various

hourly rates.

---

[3] The $ 5,986.55 difference between the amount Defendants initially sought in their papers filed July 6, 2010 and the amount Defendants seek in their papers filed September 10, 2010 represents the attorney's fees and costs Defendants incurred in redeposing Owens on August 4, 2010, which were not included in the earlier papers.

| Attorney: | Bloomberg[4] | Sager[5] | Marino[6] | Duelks[7] |
|---|---|---|---|---|
| Hourly Rate: | $ 345 | 500 | 330 | 245 |
| Hours: | 3.1 | 4.9 | 15.7 | 6.7 |
| Sub-Total: | $ 1,069.50 | $ 2,450.00 | $ 5,181.00 | $ 1,641.50 |
| Hourly Rate: | $ 349 | 530 | 365 | |
| Hours: | 2.8 | 24.9 | 33.8 | |
| Sub-Total | $ 977.20 | $13,197.00 | $ 12,33.00 | |
| Hourly Rate: | $ 355 | | | |
| Hours: | 2.9 | | | |
| Sub-Total: | $ 1,029.50 | | | |
| Total: | $ 3,076.20 | $15,647.00 | $17,518.00 | $ 1,641.50 |

GRAND TOTAL: **$ 37,882.70**

Defendants also seek reimbursement of $ 1,926.34 for the costs incurred deposing Owens on February 18, 2010, and $ 732.49 for the costs incurred for the second deposition of Owens on August 4, 2010, for total costs of $ 2,658.83. As such, Defendants seek a total award of $ 40,541.53 in attorney's fees and costs in connection

---

[4] Bloomberg's hourly rate was $ 345 until November 2009, $ 349 from December 2009 through February 2010, and $ 355 since March 2010.

[5] Sager's hourly rate was $ 500 in 2009, increasing to $ 530 in 2010.

[6] Marino's hourly rate was $ 330 in 2009, increasing to $ 365 in 2010.

[7] Duelks's hourly rate was $ 245 in 2009. Although Duelks's hourly rate increased to $ 275 in 2010, no reimbursement is sought for any hours Duelks worked on the case in 2010.

with the sanctions motions, and the Owens deposition and redeposition.

Plaintiff challenges the attorney's fees and costs awarded on several grounds, including (1) the hourly attorney rate used to calculate the fees to be awarded should be the prevailing rate in the Buffalo, New York area, rather than in New Jersey, where Defendants' firm Day Pitney LLP is located ("Day Pitney"), Plaintiff's Memorandum at 1-3; (2) Defendants have failed to establish the reasonableness of any of the hourly rates for any of their attorneys, *id.* at 3-6; (3) the documentation Defendants submitted in support of the sanctions award is too vague to permit the court to determine whether such fees are justified, *id.* at 7-16; (4) Defendants' documentation establishes unnecessary duplication of efforts by multiple attorneys, *id*. at 16-18; and (5) Defendants' request, made in a footnote,[8] for attorney's fees incurred in connection with preparing the fee application should be denied, *id.* at 18-19.  Preliminarily, Plaintiff's arguments proffered in opposition to Defendants' fee application fail to perceive any distinction between attorney's fees awarded pursuant to a fee-shifting statute, and attorney's fees awarded as a sanction.

The reasoning behind the calculation of an attorney's fee awarded under a fee shifting statute, such as the Americans with Disabilities Act, 42 U.S.C. § 12205, and the Voting Rights Act, 42 U.S.C. § 19731(e), is not precisely analogous to an award of attorney's fees as a disciplinary sanction pursuant, as here, to Rule 37.  "The general purpose of fee-shifting statutes . . . is to permit plaintiffs with valid claims to attract

---

[8] Sager Supplemental Declaration ¶ 10 n. 1 (requesting permission to submit the fees and costs incurred in preparing the fee application although the D&O did not specifically mention awarding such fees and costs).

effective legal representation and 'thereby to encourage private enforcement of civil rights statutes, to the benefit of the public as a whole.'" *Green v. Torres*, 361 F.3d 96, 100 (2d Cir. 2004) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999)).  As such, in calculating an award of attorney's fees pursuant to a fee-shifting statute, much consideration is given to the "forum rule" which provides that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation omitted).

In contrast, attorney's fees awarded as a sanction are not intended only as compensation of reimbursement for legal services, but also serve as a deterrent to abusive litigation practices and, as such, district courts have discretion in determining the amount of an attorney's fee awarded as a sanction.  *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d at 259, 266 (2d Cir. 1994) ("*Caisse Nationale*") (acknowledging "principal objective" of sanctions "is not compensation of the victimized party, but rather the deterrence of baseless filings and the curbing of abuses" arising in the litigation process).  Although the sanctions at issue in *Caisse Nationale* were awarded pursuant to Fed.R.Civ.P. 11, the Second Circuit recently reiterated that sanctions awarded pursuant to Rule 37 are also intended as a deterrent to misbehavior in litigation.  Specifically,

> Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants:
>
>> Disciplinary sanctions under Rule 37 are intended to serve three purposes.  First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third,

they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*Southern New England Telephone Company v. Global NAPS Inc.*, __ F.3d __, 2010 WL 3325962, at *19 (2d Cir. Aug. 25, 2010) (quoting *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)).

*See also Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (stating Rule 37 sanctions may serve both to "penalize those whose conduct may be deemed to warrant" them and to "deter those who might be tempted to such conduct in the absence of such a deterrent.").

Even after a party's compliance with a discovery order following imposition of sanctions, the awarded sanctions may still be justified by the deterrent purposes. *Southern New England Telephone Company*, 2010 WL 3325962, at * 19. Specifically, if a party flouts its discovery obligations by choosing to wait for a court order before providing discovery responses, "the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules." *Id*. (quoting *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("Under the deterrence principle of *National Hockey* [*League*], plaintiff's hopelessly belated compliance should not be accorded great weight. Any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall.").

That district courts have discretion in awarding sanctions is evident by the fact that all aspects of a district court's decision to impose sanctions, including the determination that sanctions are warranted, as well as the appropriate sanction, are

subject to review only for abuse of discretion. *See Southern New England Telephone Co.*, 2010 WL 3325962, at * 14 (reviewing award of Rule 37 sanctions for abuse of discretion); *U.S. v. Seltzer*, 227 F.3d 36, 39 (2d Cir. 2000) (reviewing imposition of sanction pursuant to court's inherent power to sanction for abuse of discretion);and *Eastway Construction Corp. v. City of New York*, 821 F.2d 121, 122 (2d Cir.) (reviewing imposition of Rule 11 sanctions for abuse of discretion), *cert. denied*, 484 U.S. 918 (1987).

"Courts typically use the lodestar method[9] to determine reasonable costs and attorney's fees awarded as a sanction under Rule 37(a)(4)(A)."[10] *Rich Products Corporation v. Impress Industries, Inc.*, 2008 WL 203020, at * 2 (W.D.N.Y. Jan. 23, 2008) (citing *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002)). A "presumption of reasonableness" attaches to the lodestar figure. *Farbotko v. Clinton County of New York*, 433 F.3d 204, 208 (2d Cir.

---

[9] Although the Second Circuit recently "simplif[ied] the complexities surrounding attorney's fees awards" by reconciling the "lodestar" method, being the product of the number of hours worked and the attorney's usual hourly rate, subject to adjustment for any case-specific considerations, to arrive at a "reasonable fee," with the *Johnson* method, set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), and describing "a one-step inquiry that considered twelve specific factors to establish a reasonable fee," *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 114 (2d Cir. 2007) ("*Arbor Hill*"), such undertakings were in the context of attorney's fees awarded pursuant to fee-shifting statutes, including the Americans with Disabilities Act (*Simmons*), and the Voting Rights Act (*Arbor Hill*). In arriving at a standard "termed the 'presumptively reasonable fee,'" the Second Circuit "directed district courts, in calculating the presumptively reasonable fee, 'to bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.'" *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill*, 493 F.3d at 117) (italics in original). "The presumptively reasonable fee boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively." *Simmons*, 575 F.3d at 174 (quoting *Arbor Hill*, 493 F.3d at 112, 118).

[10] Fed.R.Civ.P. 37(a)(4)(A) was recodified in 2007 as Fed.R.Civ.P. 37(a)(5)(A).

2005). "The lodestar figure is calculated by 'multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved.'" *Rich Products Corp.*, 2008 WL 203020, at * 2 (quoting *Kapoor v. Rosehthal*, 269 F.Supp.2d 408, 412 (S.D.N.Y. 2003)). Rule 37(a)(5)(A), however, addresses those situations in which a party incurs expenses in making a motion to obtain a court order for discovery, compared to Rule 37(b), which addresses the situation where expenses are incurred as a result of the violation of a court order directing discovery. Significantly, Rule 37(a)(5)(A) provides the court with discretion not to order payment of attorney's fees upon the movant's failure to demonstrate a good faith effort to obtain the discovery prior to seeking judicial intervention, the nonmovant's failure to disclose was substantially justified, or some other circumstances render an attorney's fee award unjust. Fed.R.Civ.P. 37(a)(5)(A)(i)-(iii).

In contrast, Rule 37(b) provides, in pertinent part, that sanctions be awarded for failing to comply with discovery, including seven non-monetary sanctions listed in Rule 37(b)(2)(A)(i) - (vii), or "the court *must* require the disobedient party, the attorney advising that party, or both to pay the *reasonable expenses*, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C) (italics added). As such, whether to award attorney's fees under Rule 37(b) is not a matter of judicial discretion, but is required, absent substantial justification, which Plaintiff here has not asserted.

The Second Circuit Court of Appeals has not opined as to how to calculate attorney's fees awarded as a sanction pursuant to Rule 37(b), yet has discussed an

award of attorney's fees as a sanctions for a violation of Fed.R.Civ.P. 11. *See*, *e.g.*, *Eastway Construction Corp.*, 821 F.2d at 122 (reviewing district court's award of attorney's fee as Rule 11 sanction). Significantly, the Second Circuit has held that when awarding attorney's fees as a sanction, the "lodestar" amount need not routinely be awarded. *Id.* (discussing that attorney's fee awarded as Rule 11 sanction can vary from lodestar amount, yet must still be within a range reasonable to achieve deterrent objective of such award). As such, in determining the attorney's fee to be awarded Defendants as a sanction, the court commences with the lodestar or "presumptively reasonable fee," which is then adjusted as necessary to assure Rule 37(b)'s deterrent objective is achieved.

In calculating the lodestar amount, the initial burden is on the requesting party to submit evidence supporting the number of hours worked and the hourly rate claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "lodestar" calculation should exclude fees for work that is "excessive, redundant or otherwise unnecessary," as well as hours dedicated to severable unsuccessful claims. *Quarantino*, 166 F.3d at 425 (citing *Hensley*, 461 U.S. at 433-35). To prevent the court from reviewing and ruling on each item for which reimbursement is requested, courts have permitted a percentage-based reduction from the number of hours submitted as a means of trimming excess time from the fee request. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted); *see Walker v. Coughlin*, 909 F.Supp. 872, 881 (W.D.N.Y. 1995) (reducing by 15 % the total hours requested).

12

Plaintiff's first challenge, that the hourly attorney rate used to calculate the fees to be awarded should be the prevailing rate in the Buffalo, New York area, rather than in New Jersey, Plaintiff's Memorandum at 1-3, is without merit.  In particular, in calculating, in this case, attorney's fees awarded as a sanction, the court is not required to apply the forum rule, calculating the attorney's fee award based only on prevailing attorney rates in the district in which the reviewing court sits; rather, the court has discretion to use out-of-district rates in fixing the amount of an attorney's fee awarded as a sanction.  *On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed.Appx. 448, 452 (2d Cir. 2009)[11] (holding district court entitled to use out-of-district hourly rates to calculate attorney's fee awarded as Rule 11 sanction to advance purpose of Rule 11 to deter baseless filings, rather than to shift fees).  *See also Caisse Nationale*, 28 F.3d 259, 266 (2d Cir. 1994) (that attorney's fee awarded for Rule 11 sanction may have duplicated attorney's fee awarded as part of judgment provided no basis for setting aside award of sanctions because primary objective of Rule 11 sanctions is not compensation of victimized party, but deterrent to baseless filings and curbing of abuses).

The court takes judicial notice that both Defendant Huber, in Edison, New Jersey, and Defendants' lead counsel, Day Pitney, in Morristown, New Jersey, are located in northern New Jersey, not far from New York City.  Day Pitney has acted as Defendant Huber's legal counsel since 1997, and has represented Defendants in

---

[11] Although *On Time Aviation Inc.*, 354 Fed.Appx. 448, is designated as "not selected for publication in the Federal Reporter," Fed.R.App.P. 32.1 provides that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007."

connection with this matter since the action was originally commenced in Texas state court in 2000.  Sager Supplemental Declaration ¶ 4.  As such, it is only logical that Defendants would continue to have Day Pitney represent them with regard to the sanctions motions and Owens's deposition.

Nor is there any merit to Plaintiff's argument that Defendants should have had local counsel, whose hourly rates are significantly rates are significantly lower (yet still disputed) than Day Pitney's hourly rates, prepare and argue the sanctions motions; rather, "[t]he primary purpose of local counsel is their expertise of the procedural rules in the prevailing district."  *Kawan Food Mrg. SDN BHD v. Bengal Sea Foods USA Canada, Inc.*, 2008 WL 5483106, at * 3 (E.D.N.Y. Dec. 1, 2008) (citing *Marler v. Amoco Oil Co., Inc.*, 793 F.Supp. 656, 659 (E.D.N.C. 1992)).  The court is also aware that a party located other than within this district will often retain lead counsel located within the same geographic area as the party, and that local counsel, *i.e.*, an attorney maintaining an office in this district, is also retained only because Rule 83.2(a)(1) of the Western District of New York's Local Rules of Civil Procedure, compels it.  It thus is not reasonable, as Plaintiff asserts, Plaintiff's Memorandum at 1-3, for Defendants to have relied on Phillips Lytle, hired as local rather than lead counsel, for the sanctions motions, instead of its lead counsel Day Pitney.

The court, therefore, is not required to calculate the fee award for Defendants' New Jersey attorneys based on the prevailing rate in the Buffalo, New York area, rather than in New Jersey.  Accordingly, Defendants attorney's fee award will be calculated based on prevailing New Jersey hourly rates for the time expended by Defendants' lead counsel, located in New Jersey, on the sanctions motions and depositions, and based

14

on the prevailing Buffalo market hourly rates for the time expended by Defendants' local counsel on the motions and depositions.

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 3-6, that Defendants have failed to establish the reasonableness of any of the hourly rates for any of their attorneys. Defendants seek reimbursement for the Day Pitney attorneys at hourly rates ranging from $ 500 to $ 530 for Sager, a partner who has practiced law for 19 years, $ 330 to $ 365 for Marino, of counsel to Day Pitney, with eight years experience, and $ 245 for Duelks, a third-year associate. Sager Supplemental Declaration ¶¶ 3-8. Reimbursement for Bloomberg, a partner with Phillips Lytle since 1980, who has practiced law since 1972, is sought at hourly rates ranging from $ 345 to $ 355. Bloomberg Supplemental Declaration ¶¶ 1-5. According to Plaintiff, Huber has failed to establish, other than by mere affidavit, that its requested hourly rates are reasonable in either the Buffalo or New Jersey markets. Plaintiff's Memorandum at 3-6.

To establish the prevailing market rate, the party awarded attorney's fees must offer evidence that the requested hourly rate is in line with the market rate in the community. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). "[T]he fee applicant has the burden of showing by 'satisfactory evidence - in addition to the attorney's own affidavits' - that the requested hourly rates are the prevailing market rates." *Farbotko*, 433 F.3d at 209 (quoting *Blum*, 465 U.S. at 896 n. 11). Ideally, included in the fee applicant's attorney's affidavits should be information regarding the credentials of each attorney seeking reimbursement, as well as an affidavit by a disinterested local practitioner attesting to the relevant prevailing market rates. *McDonald*, 450 F.3d at 97 & n. 5. A district court may also take "judicial notice of the rates awarded in prior cases

and the court's own familiarity with the rates prevailing in the district." *Farbotko*, 433 F.3d at 209.

With regard to the hourly rate requested for the Day Pitney attorneys, Defendants have not, contrary to Plaintiff's assertion, merely relied on Sager's statements in his supplemental declaration to establish the reasonableness of the requested rates. Rather, Defendants reference both caselaw and an article in the New Jersey Law Journal to establish that Day Pitney's hourly rates are reasonable for large law firms in New Jersey. Defendants' Memorandum at 2-3. According to the *New Jersey Law Journal* article *Firms Hike Rates, Weak Economy Notwithstanding*, N.J.L.J., Dec. 23, 2002, at 1025,[12] the hourly rate for a partner at a New Jersey law firm in 2002 ranged between $ 215 and $ 600, while associates' hourly rates ranged from $ 120 to $ 295, with the higher rates generally charged at the larger firms, and Day Pitney's hourly rate for partners reported as $ 280 to $ 450. In an unpublished 2006 decision, the Third Circuit Court of Appeals affirmed the New Jersey District Court's application of an hourly rate of $ 500 for a partner at a top New Jersey law firm in calculating a fee award pursuant to the civil rights statute's fee-shifting provision, 42 U.S.C. § 1988(b). *Tenafly v. Eruv Association, Inc. v. Borough of Tenafly*, 195 Fed.Appx. 93, 97-98, 2006 WL 2547253, at * 2 (3d Cir. 2006). In 2006, the District of New Jersey approved as reasonable an "average" hourly rate, calculated based on a New Jersey Law Journal article published on September 26, 2005, which showed the average hourly rate for partners at the ten largest New Jersey law firms, including Day Pitney, of $ 394, and

---

[12] A copy of the article is attached as Exhibit A to the Sager Supplemental Declaration.

$ 235 for associates. *Sypnieweski v. Warren Hills Regional Bd. of Educ.*, 2006 WL 1675066, at * 10 (D.N.J. June 14, 2006). More recently, the District of New Jersey court has considered as reasonable in calculating a lodestar figure hourly rates between $ 465 and $ 650 "in light of similar rates charged in the market. . . ." *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at * 18 (D.N.J. Mar. 26, 2010).[13]

Based on Defendants' submissions in support of its attorneys' hourly rates, the authenticity or accuracy of which Plaintiff does not dispute, and caselaw of which the undersigned takes judicial notice, *Farbotko*, 433 F.3d at 209, the court finds that the Day Pitney attorneys' hourly rates are in line with the prevailing market rates for attorneys of similar credentials at large New Jersey law firms. As such, the court will apply the hourly rates for New Jersey as represented by Defendants for the Day Pitney attorneys.

With regard to Bloomberg's hourly rates ranging from $ 345 for work performed in 2009, and $ 355 for work performed in 2010, Defendants maintain that in 2004, an hourly rate of $ 325 was awarded in the Western District of New York to a partner with

---

[13] The court notes the September 26, 2005 article referenced in *Sypnieweski*, 2006 WL 1675066, at * 10, reports Day Pitney's average highest hourly partner rate in 2005 as $ 473. *As Corporate Counsel Call the Shots, Law Firms Cautiously Increase Fees*, N.J.L.J., September 26, 2005, *available at* http://www.law.com/jsp/article.jsp?d=900005437684. Nevertheless, although the Second Circuit has recognized that taking judicial notice of internet material as circumstantial evidence may be appropriate where the authenticity of the website is not challenged, *see Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Department of Parks & Recreation*, 311 F.2d 534, 548-49 (2d Cir. 2002) (taking judicial notice that defendant's internet website designated property at issue as a "park" where defendant did not contest website's authenticity), here, because Defendants have not referenced this website, it is unfair to expect Plaintiff to challenge the website, and the court refrains from taking judicial notice of the website and the article, other than as reported in *Sypnieweski*.

25 years experience.  Defendants' Memorandum at 3 (citing *Murphy v. Bd. of Education*, 420 F.Supp.2d 131, 139 (W.D.N.Y. 2006)).  Nowhere within the *Murphy* decision, however, is any hourly rate discussed, although an hourly rate of $ 325 is mentioned in an affidavit submitted in support of the fee application at issue in *Murphy*. *See Murphy v. Bd. of Education*, W.D.N.Y., No. 00-CV-06038L(F), Affidavit of J. Nelson Thomas, Esq., (Doc. No. 432-15), ¶ 19 (indicating that in 2004, the standard hourly rate for defendant's law firm's managing partner with previous federal judiciary experience was $ 325).  It is, however, not possible to discern from the text of the decision whether the $ 325 hourly rate was actually applied.  Nevertheless, the court's research has revealed that an hourly rate of $ 300 was awarded to a partner within the Western District of New York in 2005.  *See Diamond "D" Construction Corp. v. New York State Department of Labor*, 2005 WL 2614955, at *4 (W.D.N.Y. Oct. 13, 2005) (accepting as reasonable hourly rate of $ 300 for senior attorney).

Allowing for an annual increase of $ 10 per hour, consistent with Bloomberg's representation that his hourly rate was $ 345 in 2009 and increased to $ 355 in 2010, the $ 300 hourly rate applied in 2005 in *Diamond "D" Construction Corp*. would have increased to $ 340 by 2009 and to $ 350 by 2010.  Accordingly, the court finds Bloomberg's hourly rate is reasonable and applies it in calculating the lodestar for the hours expended by Bloomberg.

Plaintiff also maintains Defendants' documentation submitted in support of the sanctions award is too vague to permit the court to determine whether such fees are justified, Plaintiff's Memorandum at 7-16, and that Defendants' documentation establishes unnecessary duplication of efforts by multiple attorneys. *Id*. at 16-18.  For

example, Plaintiff asserts that the February 18, 2010 billing entry for Bloomberg, reading

> Telephone P. Marino, Judge Foschio's chambers re Owens deposition; Telephone D Sager, P Marino re same, Judge Foschio order; Review same; Work re motion to dismiss complaint for R&M discovery abuses; Review Liebson e-mail re Rigot, Ratieri depositions; Telephone D Sager, P Marino re reply; Work re same

combines numerous tasks into a single billing entry, rendering it impossible to determine how much time was devoted to each task.  Plaintiff's Memorandum at 7. Plaintiff also maintains that the word "work" is vague and prevents identifying the precise task performed, such as research and writing which an attorney would be expected to perform, or a clerical task that could be performed by a paralegal, as well as whether there was any duplication of such "work" by another attorney. *Id*. at 7-8.

Plaintiff also takes issue with the fact Defendants utilized four attorneys, including two partners, for "routine legal papers."  Plaintiff's Memorandum at 8. Plaintiff's characterization of papers in support of motions seeking sanctions for violations of court-ordered discovery pursuant to Rule 37 as "routine legal papers" begs the question of the type of law in which Plaintiff's legal counsel is routinely engaged. Further, although four attorneys were utilized, Defendants' billing records establish that 52% of the total hours were billed by Marino, an associate.

Rather than attempt to identify specific hours that should be eliminated for duplication of efforts or vagueness, and to account for those clerical tasks that could have been performed by paralegals, the court is permitted to make a simple reduction in the number of hours to "trim the fat."  *McDonald*, 450 F.3d at 96 (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1988) (deducting a "reasonable percentage of the

number of hours claimed" to account for "excessive, redundant, or otherwise unnecessary" hours)). See *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a specific percentage cut is "a practical means of trimming fat from a fee application."). In the instant case, a review of Defendants' documentation in support of its attorney's fee application corroborates Plaintiff's concerns that not a single entry is for work performed by a paralegal, although some of the tasks for which Defendants billed certainly did not require an attorney's attention. *See*, *e.g.*, October 19, 2009 entries for Duelks ("Shepardize, cite-check, and prepare Table of Contents and Table of Authorities for reply brief in further support of motion for sanctions; electronically file same"). The vagueness of some entries renders it impossible to discern whether there was in fact any duplication of hours. *See*, *e.g.*, October 20, 2009 billing entries for both Marino and Sager, for revisions, review and finalization of reply brief in further support of sanctions motion). Although not yet billed to the client, Sager maintains Marino, on August 4, 2010, "spent 14.4 hours preparing for, traveling to, and taking the deposition of Mr. Owens. . . ." Sager Supplemental Declaration ¶ 13. Plaintiff argues that the actual time of the August 4, 2010 deposition was two hours, and that it is impossible to determine how much of the remaining 12.4 hours Marino spent traveling to, as compared to preparing for, the deposition, which is significant because travel time is reimbursable at only 50% the attorney's hourly rate. Plaintiff's Memorandum at 15-16.

Nevertheless, to their credit, Defendants have, on their own initiative, passed on seeking reimbursement for numerous entries for which Defendants concede multiple

tasks were combined into a single entry, even though the tasks did not necessarily pertain to the same issue. Supplemental Sager Declaration ¶¶ 14-15. For example, Defendants do not seek reimbursement for the February 17, 2010 billing entry for Marino for 5.2 hours total time to "Prepare for depositions of J. Rigot and G. Owens; telephone conversation with private investigator concerning service of subpoena upon A. Raitieri". *Id*. ¶ 14. Such entries total in excess of $ 22,000. *Id*. ¶¶ 14-15. Assuming, *arguendo*, at least half of the time accounted for in these entries pertained to the sanctions motions, Defendants have already voluntarily taken an $ 11,000 cut, representing an approximately 22.5% reduction in fees sought. As such, to account for further duplication of efforts, vagueness in descriptions of work performed, and the fact that none of the clerical work was performed by paralegals or other support staff, the court will reduce the total number of hours by 15% to "trim the fat."

Plaintiff also argues Defendants' request, made in a footnote, for attorney's fees incurred in connection with preparing the fee application should be denied. Plaintiff's Memorandum at 18-19. In particular, Defendants request an award of the attorney's fees and costs Defendants incurred in preparing the fee application although the D&O does not specifically mention such an award.

A party awarded attorney's fees is also entitled to compensation "for time reasonably spent in preparing and defending" the fee application. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999). That *Weyant* involved an award of attorney's fees pursuant to the civil rights fee-shifting statute, 42 U.S.C. § 1988, does not dissuade a similar award in connection with attorney's fees awarded as a sanction. Accordingly, Defendants are entitled to recover attorney's fees and costs incurred in connection with

the preparation and defense of their attorney's fee award.

Finally, although Plaintiff initially challenged as excessive the $ 1,692.39 Defendants sought for reimbursement of the court reporter and videographer utilized for the February 18, 2010 Owens deposition, which lasted less than three hours, maintaining that Plaintiff incurred only $ 2,078.75 in court reporter and videographer fees for a 7.5 hour deposition of Huber in July 2008, Plaintiff's challenge was limited to Defendants' failure to provide documentation of the costs of deposing Owens. Plaintiff's Response at 10 & n. 3. Defendants, however, have provided copies of the invoices received for the court reporter and videographer used in deposing Owens on February 18, 2010. Significantly, Plaintiff has not objected to this documentation.

Accordingly, with the exception of a 15% reduction to "trim the fat" on the attorney's fees, Defendants' fee application is GRANTED; Defendants are awarded $ 32,200 in attorney's fees, and $ 2,658.83 in documented costs, for a total award of $ 34,858.83.

## CONCLUSION

Based on the foregoing, Defendants' application for attorneys' fees and costs is GRANTED; Defendants are awarded $ 34,858.53 in attorneys' fees and costs incurred in connection with the First and Second Sanctions Motions, the February 18, 2010 deposition of Owens, and the redeposition on August 4, 2010.[14]

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     October 12, 2010
              Buffalo, New York

---

[14] The parties are reminded that Plaintiff remains responsible for Defendants' costs, including attorneys' fees, incurred preparing and defending the fee application. Defendants shall submit any supporting affidavits **within 10 days** of service of this Decision and Order.