UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROBBINS & MYERS, INC.,

                        Plaintiff/
          Counterclaim Defendant,

        v.

J.M. HUBER CORPORATION and
H. MILTON HOFF,

               Defendants/Counterclaimants/
                 Third-Party Plaintiffs,

        v.

ROBBINS & MEYERS ENERGY SYSTEMS, INC.,
BERKELEY FORGE & TOOL, INC., and
THOMPSON HINE LLP,

          Third-Party Defendants.

**DECISION
and
ORDER**

**01-CV-00201S(F)**

---

APPEARANCES:       THOMPSON HINE LLP
                             Attorneys for Plaintiff/Counterclaim Defendant
                               And Third-Party Defendant
                             LESLIE W. JACOBS,
                             MATTHEW E. LIEBSON,
                             KENNETH G. COLE, and
                             LUKE L. DAUCHOT, of Counsel
                             3900 Key Center
                             127 Public Square
                             Cleveland, Ohio 44114-1291

                             HODGSON RUSS LLP
                             Attorneys for Plaintiff/Counterclaim Defendant
                             And Third-Party Defendant
                             JEFFREY C. STRAVINO, and
                             ROBERT J. LANE, JR., of Counsel
                             The Guaranty Building, Suite 100
                             140 Pearl Street
                             Buffalo, New York 14202-4040

        DAY PITNEY LLP
        Attorneys for Defendants/Counterclaimants/
         Third-Party Plaintiffs
        DAVID S. SAGER,
        DENNIS LaFIURA, and
        ELIZABETH J. SHER, of Counsel
        P.O. Box 1945
        Morristown, New Jersey 07962-1945

        PHILLIPS LYTLE LLP
        Attorneys for Defendants/Counterclaimants/
         Third-Party Plaintiffs
        EDWARD S. BLOOMBERG, of Counsel
        3400 HSBC Center
        Buffalo, New York 14203

## **JURISDICTION**

This action was referred to the undersigned by Honorable William M. Skretny on December 5, 2007, for determination of non-dispositive motions. The matter is presently before the court on Defendants' application for attorneys' fees and costs awarded pursuant to Fed.R.Civ.P. 37 (Docs. Nos. 329 and 330), filed March 31, 2011.[1]

## **BACKGROUND and FACTS**[2]

Plaintiff Robins & Myers, Inc. ("Plaintiff"), commenced this fraud action on March 22, 2001, seeking to recover monetary damages allegedly incurred by R&M in connection with its 1997 purchase of a wholly-owned subsidiary of Defendant J.M. Huber Corporation ("Huber"), of which Defendant H. Milton Hoff ("Hoff"), was president

---

[1] The Second Circuit Court of Appeals considers the award of monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders a nondispositve matter reviewable by the district judge under the "clearly erroneous or contrary to law" standard. *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

[2] The Facts are taken from the pleadings and motion papers filed in this action.

(together, "Defendants"). This action has been replete with discovery disputes with several motions to compel discovery filed by the parties including, most recently, a motion to compel and for sanctions filed by Defendants on October 6, 2010 (Doc. No. 304) ("the sanctions motion"). In a Decision and Order filed March 21, 2011 (Doc. No. 325) ("March 21, 2011 D&O"), the undersigned granted the sanctions motion, and Defendants were given ten days within receipt of the D&O to file affidavits of costs and attorneys' fees incurred in connection with the sanctions motion.

Accordingly, on March 31, 2011, July 6, 2010, Defendants filed the Declaration of David S. Sager, Esq. ("Sager") (Doc. No. 329) ("Sager Declaration"), and the Affidavit of Edward S. Bloomberg, Esq. ("Bloomberg") (Doc. No. 330) ("Bloomberg Affidavit"), seeking a total award of $ 48, 467.90 for costs and attorneys' fees incurred with regard to the sanctions motion ("the fee application"). On April 10, 2011, Plaintiff filed the Opposition to Defendants' Application for Fees and Costs (Doc. No. 334) ("Plaintiff's Response"), opposing Defendants' submissions as seeking unreasonable hourly rates and claiming unreasonable amounts of time were expended on the relevant motion to compel. On April 21, 2011, Defendants filed Defendants' Reply Memorandum in Further Support of Application for Fees and Costs (Doc. No. 335) ("Defendants' Reply"). In total, Defendants seek $ 47,708.50 in attorneys' fees, and $ 759.40 in costs, for a total award of $ 48,467.90. Oral argument was deemed unnecessary.

Based on the following, Defendants' application for attorneys' fees is GRANTED.

**DISCUSSION**

As stated, as a sanction pursuant to Fed.R.Civ.P. 37(a)(5)(A) ("Rule 37"), on March 21, 2011, Defendants were awarded attorneys fees and costs incurred in preparing and arguing the sanctions motion, and Defendants were directed to file affidavits of costs and attorneys' fees relevant to the determination of the sanctions award. D&O at 94-95. Defendants submitted affidavits seeking attorneys' fees for four attorneys who worked on the sanctions motion, including three attorneys from Defendant's lead counsel Day Pitney LLP ("Day Pitney"), including David S. Sager ("Sager"), a Day Pitney partner since 2000, Paul R. Marino ("Marino"), of counsel at Day Pitney, and Erika Duelks ("Duelks"), a Day Pitney associate, and local counsel Edward S. Bloomberg ("Bloomberg"), a partner since 1980 at the Buffalo law firm Phillips Lytle LLP ("Phillips Lytle").

Traditionally, "in determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Recently, the Supreme Court considered the issue of attorneys' fees, approving the traditional lodestar method over the more subjective method set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson* method"), explaining that "[a]lthough the lodestar method is not perfect, it has several important virtues" including that "the lodestar method is readily administrable, and unlike the Johnson approach, the lodestar calculation is "objective," and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Perdue v.*

*Kenny A.*, __ U.S. __, 130 S.Ct. 1662, 1672 (2010) (citations omitted). Nevertheless, the "strong presumption" that the lodestar figure is reasonable " may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*. at 1673.

In calculating the lodestar amount, the initial burden is on the requesting party to submit evidence supporting the number of hours worked and the hourly rate claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The "lodestar" calculation should exclude fees for work that is "excessive, redundant or otherwise unnecessary," as well as hours dedicated to severable unsuccessful claims. *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35).

The following schedule lists the hours Defendants claim each attorney and the paralegal worked at the various hourly rates.

| **Attorney**: | **Sager** | **Marino** | **Duelks** | **Bloomberg** |
|---|---|---|---|---|
| Hourly Rate: | $ 530 | 365 | 275 | 355 |
| Hours: | 33.2 | 66.3 | 10.4 | 8.6 |
| Total: | $ 17,596.00 | $ 24,199.50 | $ 2,860.00 | $ 3,053.00 |
| GRAND TOTAL: | | | | **$ 47,708.50** |

Plaintiff challenges as unreasonable both Defendants' claimed hourly attorney rates and the number of hours spent on the sanctions motion. Plaintiff's Response at 1- 2. In opposing the hourly rates stated in Defendants' fee application, Plaintiff asserts it is relying on the same reasons asserted in its memorandum of law (Doc. No. 303) ("Plaintiff's Prior Response"), filed September 20, 2010, in opposition to Defendants' earlier fee application made pursuant to this court's June 24, 2010 Decision and Order

(Doc. No. 292) ("June 24, 2010 D&O), awarding Defendants costs, including attorneys' fees, of two earlier sanctions motions (Docs. Nos. 247 and 275). Plaintiff's Response at 1. In particular, Plaintiff argued in connection with the earlier fee application that the hourly attorney rate used to calculate the fees to be awarded should be the prevailing rate in the Buffalo, New York area, rather than in New Jersey, where Defendants' lead counsel Day Pitney LLP is located ("Day Pitney"). Plaintiff's Prior Response at 1. Despite Plaintiff's arguments, the undersigned calculated the award of Defendants' attorneys' fees using the out-of-district hourly rates provided by Defendants. *See* October 12, 2010 Decision and Order (Doc. No. 305) ("October 12, 2010 D&O"), at 13-18.[3]

Applying the hourly rates and number of hours Plaintiff maintains are justified, Plaintiffs assert Defendants are entitled to attorneys' fees as follows:

| **Attorney**: | **Sager** | **Marino** | **Duelks** | **Bloomberg** |
|---|---|---|---|---|
| Hourly Rate: | $   200 | 175 | 150 | 240 |
| Hours: | 14.6 | 13.0 | 20.0 | 5.25 |
| Total: | $ 2,920.00 | $ 2,275.00 | $ 3,000.00 | $ 1,260.00 |
| GRAND TOTAL: | | | | **$ 9,455.00** |

Plaintiff also opposes the airfare and cab fare Defendants seek for traveling to Buffalo for oral argument on the sanctions motion. *Id*. at 8-9. Disallowing for the undocumented $ 78 cab fare, Plaintiff maintains Defendants are entitled to only

---

[3] Plaintiff's objections to the undersigned's October 12, 2010 D&O, awarding Defendants attorneys' fees for out-of-town counsel calculated based upon out-of-district rates, filed October 22, 2010 (Doc. No. 310), remain pending before Judge Skretny.

$ 10,136.40 in costs and attorneys' fees.  Plaintiff's Response at 7-8.  Alternatively, Plaintiff suggests the court, rather than independently review each of the fee entries submitted by Defendants, simply reduce the fees requested across the board by 50%. *Id*. at 8.

Plaintiff's argument that Defendant should seek reimbursement for out-of-district counsel at hourly rates generally charged in this district invokes the "forum rule" which provides that "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation omitted).  While an award of attorneys' fees pursuant to a fee-shifting statute generally adheres to the forum rule, *id.*, here the attorneys' fees are being awarded pursuant to Rule 37(a)(5)(A), which addresses those situations in which a party incurs expenses in making a motion to obtain a court order for discovery, and provides the court with discretion not to order payment of attorneys' fees upon the movant's failure to demonstrate a good faith effort to obtain the discovery prior to seeking judicial intervention, the nonmovant's failure to disclose was substantially justified, or some other circumstances render an attorneys' fee award unjust.  Fed.R.Civ.P. 37(a)(5)(A)(i)-(iii).  Significantly, in deciding to award attorneys' fees, the undersigned specifically found that Plaintiff's violations of Fed.R.Civ.P. 26(e) were not substantially justified, and that no other circumstances rendered an award of attorneys' fees unjust.  March 21, 2011 D&O at 92-94.

Because the court is calculating the attorneys' fees to be awarded as a sanction, the court is not required to apply the forum rule, calculating the attorneys' fee award based only on prevailing attorney rates in the district in which the reviewing court sits;

rather, the court has discretion to use out-of-district rates in fixing the amount of an attorneys' fee awarded as a sanction and to deter similar conduct in the future. *See On Time Aviation, Inc. v. Bombardier Capital, Inc.*, 354 Fed.Appx. 448, 452 (2d Cir. 2009) (holding district court entitled to use out-of-district hourly rates to calculate attorneys' fee awarded as Rule 11 sanction to advance purpose of Rule 11 to deter baseless filings, rather than to shift fees). The Second Circuit recently reiterated that sanctions awarded pursuant to Rule 37 are intended as a deterrent to misbehavior in litigation. *Southern New England Telephone Company v. Global NAPS Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (recognizing Rule 37 disciplinary sanctions are intended to ensure (1) the party does not benefit from its noncompliance; (2) specific deterrent to obtain compliance with order; and (3) a general deterrent effect with regard to both the case at hand and on other litigation). *See also Nat'l Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (stating Rule 37 sanctions may serve both to "penalize those whose conduct may be deemed to warrant" them and to "deter those who might be tempted to such conduct in the absence of such a deterrent."). There thus is no merit to Plaintiff's argument, Plaintiff's Memorandum at 1, incorporating by reference Plaintiff's argument made in opposing Defendants' earlier fee application, *i.e.*, that the hourly attorney rate used to calculate the fees to be awarded should be the prevailing rate in the Buffalo, New York area, rather than in New Jersey, where Day Pitney is located. Plaintiff's Prior Response at 1.

Further, both Defendant and Defendants' lead counsel, Day Pitney, Defendant Huber's legal counsel since 1997, are located in northern New Jersey in close proximity to New York City. Nor were Defendants required to have local counsel, whose hourly

rates are significantly rates are significantly lower than Day Pitney's hourly rates, prepare and argue the sanctions motions; rather, "[t]he primary purpose of local counsel is their expertise of the procedural rules in the prevailing district." *Kawan Food Mrg. SDN BHD v. Bengal Sea Foods USA Canada, Inc.*, 2008 WL 5483106, at * 3 (E.D.N.Y. Dec. 1, 2008) (citing *Marler v. Amoco Oil Co., Inc.*, 793 F.Supp. 656, 659 (E.D.N.C. 1992)). Day Pitney has represented Defendants in this action since 2000 when the Complaint was filed in Texas state court. It thus is not reasonable to expect local counsel, rather than lead counsel, would prepare and argue the sanctions motion, and based on Plaintiff's failure to establish any reason for requiring the court to calculate Defendants' fee award based upon the prevailing rate in Buffalo, rather than in New Jersey, Defendants' attorneys' fee award will be calculated based on prevailing New Jersey hourly rates.

Nor is there any merit to Plaintiff's argument, Plaintiff's Memorandum at 3-6, that Defendants have failed to establish the reasonableness of any of the hourly rates for any of their attorneys. Significantly, other than asserting that Defendants' attorneys are entitled to reimbursement only at the prevailing rates for local counsel, Defendants do not assert that the asserted rates for lead counsel are not in line with the market rate for attorneys of similar experience in the New York City metropolitan community. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984) (to establish the prevailing market rate, the party awarded attorneys' fees must offer evidence that the requested hourly rate is in line with the market rate in the community). According to Plaintiff, Huber has failed to establish, other than by mere affidavit, that its requested hourly rates are reasonable in either the Buffalo or New Jersey markets. Plaintiff's Memorandum at 1-2.

A district court, however, may also take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005) (citing cases). Here, the court takes judicial notice of the fact that the hourly rates Defendants seek in connection with the instant motion for both their lead counsel attorneys, as well as local counsel, have already been approved by the undersigned in connection with the earlier attorneys' fee award based on Defendants' submissions made in connection with such award. October 12, 2010 D&O (Doc. No. 305), at 15-18.[4] Accordingly, the court will calculate the attorneys' fees to be awarded using the hourly rates provided by Defendants, and the sole remaining issue is whether the hours Defendants' attorneys claim to have spent on the motion have been properly documented and are justified.

Plaintiff takes issue with the fact Defendants' memorandum submitted in support of the underlying motion to compel required four attorneys to prepare nine pages of text with a "handful of legal citations referencing straightforward legal principles," and that Defendants' supplemental memorandum submitted at the court's request following oral argument repeats legal arguments and citations from the original memorandum. Plaintiff's Memorandum at 1-2. Plaintiff also challenges Defendants' counsel's billing

---

[4] The court notes that in 2010, Thompson Hine, located in Cleveland, Ohio, in the Northern District of Ohio, sought to recover attorney fees billed in 2008 in the Northern District of Ohio at the hourly rates of $ 340 to $ 400 for partners, and $ 225 to $ 260 for associates. *Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, 707 F.Supp.2d 737, 760 and n. 16 (S.D.N.Y. 2010). In fact, in 1997 Thompson Hine suggested $ 300 as a reasonably hourly rate for which an award of attorneys' fees was sought. *Simon DeBartolo Group, Inc. v. The Richard E. Jacobs Group, Inc.*, 985 F.Supp. 427, 433-34 (S.D.N.Y. 1997). Further, in 2008, in an unrelated case, $ 210 was found to be a reasonable rate for attorneys' fees for a partner with nine years experience with Plaintiff's local counsel, Hodgson Russ, LLP. *See Rich Products Corporation v. Impress Industries, Inc.*, 2008 WL 203020, at * 3 (W.D.N.Y. Jan. 23, 2008) (also stating, in *dicta*, that $ 290 has been held a reasonable hourly rate for a partner with 25 years experience). These rates exceed, even without considering an inflationary factor, those proffered by Plaintiff in the instant case.

records as "vague, duplicative," establishing only "that a significant discount from the requested fees is required." *Id*. at 2. The court disagrees.

Simply put, the undersigned, being thoroughly familiar with the papers submitted in connection with the underlying motion to compel, does not find that such papers were so routine or simple as to require the limited number of hours for research and drafting suggested by Plaintiff. For example, the numerous references to specific pages and lines of deposition testimony of various witnesses, *see*, *e.g.*, Doc. No. 304-1 at 10 (referencing specific pages and lines of Rigot's deposition testimony including, *inter alia*, (1) purpose of February 2010 meeting (Rigot Dep. Tr. at 19:19-22), (2) changes to public service announcement based on comments from Thompson Hine and Mr. Rahimians's communications (Rigot Dep. Tr. at 25:1-26:4), and (3) Rigot's own participation in the meeting (Rigot Dep. Tr. at 26:5-25)), along with locating the precise pages of such deposition testimony and other documents to attach as exhibits, as well as cross-referencing other documents filed in this action, would have been time-consuming to prepare and proof-read for accuracy. Although, as Plaintiff points out, Plaintiff's Response at 1-2, Defendants cite to only four cases in the memorandum submitted in support of the motion to compel, such fact does not mean that Defendants read only four cases in preparing the memorandum, or that Defendants did not engage in other necessary research, including researching the referenced documents to locate the precise language or information to be cited, nor does it support a finding that the matter was "routine." Rather, a careful reading of the motion establishes the issues before the court were largely fact-based, hence requiring careful description of how the information for which Defendants sought to compel discovery was relevant, and wrongly

withheld. Moreover, the court's 95 page March 21, 2011 D&O reflects that the motion also presented complex issues of law requiring detailed and thorough analysis, hardly evidence of a "routine" discovery dispute.

Defendants do, however, concede that two of the billing entries, including Mr. Marino's September 30, 2010 entry and Mr. Sager's October 4, 2010 entry improperly combine tasks unrelated to the underlying motion to compel, and should be disregarded. Defendants' Reply at 3. Accordingly, the court deducts 4 hours from Marino's time for the disregarded September 30, 2010 entry, and 2.6 hour from Sager's time for the disregarded October 4, 2010 entry. Such deductions reduce the fees for Marino from $ 24,199.50 to $ 22,739.50, and for Sager from $ 17,596.00 to $ 16,218.00, resulting in a total attorneys' fee award of $ 44,870.50.

Rather than attempt to identify specific hours that should be eliminated for duplication of efforts or vagueness, and to account for those clerical tasks that could, as Plaintiff contends, have been performed by paralegals, the court is permitted to make a simple reduction in the number of hours to "trim the fat." *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.") (internal quotation marks and citation omitted); *See New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (recognizing that because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," a specific percentage cut is "a practical means of trimming fat from a fee application."); and *Walker v. Coughlin*, 909 F.Supp. 872, 881 (W.D.N.Y. 1995) (reducing by 15 % the total hours requested). In the instant case, a

review of Defendants' documentation in support of its attorneys' fee application corroborates Plaintiff's complaints that the vagueness of some entries renders it difficult to discern whether there is any duplication of work being performed.  *See*, *e.g.*, November 1, 2010 entry for Sager ("Review and revise reply in support of motion to compel"), November 2, 2010 entry for Sager ("Revise reply in support of motion to compel; instructions to P. Marion regarding additional research/ revisions"), and November 3, 2010 entry for Marino ("Review and revise reply brief in support of motion to compel").  Similarly, Plaintiff asserts that billing entries pertaining to "research" are so vague that it cannot be determined what was being researched, rendering it impossible to discern whether any research performed by the attorneys was duplicative.  Plaintiff's response at 3.  Plaintiff also questions why Duelk, the attorney with the lowest hourly rate, was not engaged to perform a larger portion of the required research on the sanctions motion on the Memorandum in Support, when Duelks was acceptable to perform research on the Reply Brief.  Plaintiff's Response at 3 and n. 3.

     Nevertheless, as discussed above, given the complexity of the issues before the court on the underlying motion to compel, the total amount of time Defendants claims to have spent on the motion to compel does not seem out of line.  As such, to account for further duplication of efforts, vagueness in descriptions of work performed, and the fact that none of the clerical work was performed by paralegals or other support staff, the court will reduce the total number of hours by 15% to "trim the fat," thus reducing the attorneys' fees from $ 44,870.50 to $ 38,140.00.

     Plaintiff also opposes Defendants' request for attorneys' fees incurred in connection with preparing the fee application "for the reasons previously stated in its

opposition to the prior fee application and its pending Objection." Plaintiff's Response at 8-9 (referencing Doc. No. 303 at 18-19). In particular, Defendants request an award of the attorneys' fees and costs Defendants incurred in preparing the fee application although the D&O does not specifically mention such an award, and Rule 37(a)(5)(A) specifies only that "the fees incurred in litigating the motion are properly charged to the sanctioned party," which necessarily would preclude an award of fees for time spent on the fee application, which Plaintiff characterizes as "fees on fees." *Id*. A party awarded attorneys' fees, however, is also entitled to compensation "for time reasonably spent in preparing and defending" the fee application. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999). Accordingly, Defendants are entitled to recover attorneys' fees and costs incurred in connection with the preparation and defense of their attorneys' fee award, and Defendants' request for such award is GRANTED.

Defendants also seek reimbursement of $ 681.40 for roundtrip airfare from New York City to Buffalo, and $ 78 for cab fare to and from the airport, for total costs of $ 759.40. Defendants' Memorandum at 8. In opposition, Plaintiff maintains that the airfare was excessive because Defendants purchased a refundable airline ticket for which a premium would have been paid, and that Defendants have failed to provide any documentation for the cab fare to and from the airport. Plaintiff's Response at 8. Plaintiff does not, however, suggest the amount of the premium Defendants would have paid for the refundable airline ticket, and Defendants make no argument in further support of the undocumented cab fare. Accordingly, Defendants will be permitted the full amount of the airfare, documented at $ 681.40, Defendants' Exh. D, but the undocumented cab fare of $ 78 shall be disallowed. *See Disabled Patriots of America,*

*Inc. v. Niagara Group Hotels, LLC*, 688 F.Supp.2d 216, 228-29 (W.D.N.Y. 2010) (disallowing recovery for undocumented expenses).

Accordingly, with the exception of a 15% reduction to "trim the fat" on the attorneys' fees, and the reductions in Sager and Marino's time as conceded by Defendants, Defendants' fee application is GRANTED; Defendants are awarded $ 38,140.00 in attorneys' fees, and $ 681.40 in documented airfare, for a total award of $ 38,821.40.

## **CONCLUSION**

Based on the foregoing, Defendants' application for attorneys' fees and costs is GRANTED; Defendants are awarded $ 38,821.40 in attorneys' fees and costs incurred in connection with the sanctions motion.[5]

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   April 27, 2011
         Buffalo, New York

---

[5] The parties are reminded that Plaintiff remains responsible for Defendants' costs, including attorneys' fees, incurred preparing and defending the fee application. Defendants shall submit any supporting affidavits **within 10 days** of service of this Decision and Order; Plaintiff's response shall be filed **within 10 days** thereafter.