UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBBINS & MYERS, INC.,

                                            Plaintiff/
                     Counterclaim Defendant,

             v.

J.M. HUBER CORPORATION and
H. MILTON HOFF,

                    Defendants/Counterclaimants/
                       Third-Party Plaintiffs,

             v.

ROBBINS & MEYERS ENERGY SYSTEMS, INC.,
BERKELEY FORGE & TOOL, INC., and
THOMPSON HINE LLP,

                    Third-Party Defendants.
_____

**DECISION
and
ORDER**

**01-CV-00201S(F)**

APPEARANCES:        THOMPSON HINE LLP
                           Attorneys for Plaintiff/Counterclaim Defendant
                            And Third-Party Defendant
                           LESLIE W. JACOBS,
                           MATTHEW E. LIEBSON,
                           KENNETH G. COLE, and
                           LUKE L. DAUCHOT, of Counsel
                           3900 Key Center
                           127 Public Square
                           Cleveland, Ohio 44114-1291

                           HODGSON RUSS LLP
                           Attorneys for Plaintiff/Counterclaim Defendant
                            And Third-Party Defendant
                           JEFFREY C. STRAVINO, and
                           ROBERT J. LANE, JR., of Counsel
                           The Guaranty Building, Suite 100
                           140 Pearl Street
                           Buffalo, New York 14202-4040

DAY PITNEY LLP
Attorneys for Defendants/Counterclaimants/
 Third-Party Plaintiffs
DAVID S. SAGER,
DENNIS LaFIURA, and
ELIZABETH J. SHER, of Counsel
P.O. Box 1945
Morristown, New Jersey 07962-1945

PHILLIPS LYTLE LLP
Attorneys for Defendants/Counterclaimants/
 Third-Party Plaintiffs
EDWARD S. BLOOMBERG, of Counsel
3400 HSBC Center
Buffalo, New York 14203

## JURISDICTION

This action was referred to the undersigned by Honorable William M. Skretny on

December 5, 2007, for determination of non-dispositive motions.  The matter is

presently before the court on Defendants' applications filed October 21, 2010 (Docs.

Nos.  308 and 309), and on May 6, 2011 (Doc. No. 340), for attorneys' fees and costs

awarded pursuant to this court's Decisions and Orders respectively filed October 12,

2010 (Doc.  No.  305), and March 21, 2011 (Doc. No. 325).[1]

## BACKGROUND and FACTS[2]

Plaintiff Robins & Myers, Inc. ("Plaintiff"), commenced this fraud action on March

22, 2001, seeking to recover monetary damages allegedly incurred by R&M in

---

[1] The Second Circuit Court of Appeals considers the award of monetary sanctions pursuant to Rule 37 for noncompliance with discovery orders a nondispositve matter reviewable by the district judge under the "clearly erroneous or contrary to law" standard.  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990).

[2] The Facts are taken from the pleadings and motion papers filed in this action.

connection with its 1997 purchase of a wholly-owned subsidiary of Defendant J.M.

Huber Corporation ("Huber"), of which Defendant H. Milton Hoff ("Hoff"), was president

(together, "Defendants").  In connection with this action, the court has resolved

numerous discovery disputes and motions to compel discovery including, relevant to

the instant motions, motions to compel and for sanctions filed by Defendants on

September 18, 2009 (Doc. No. 247) ("the first sanctions motion"), February 24, 2010

(Doc. No. 275) ("the second sanctions motion"), and October 6, 2010 (Doc. No. 304)

("the third sanctions motion").  In a Decision and Order filed June 24, 2010 (Doc. No.

292) ("June 24, 2010 D&O"), the undersigned granted the first and second sanctions

motions, including Defendants' request for costs and attorneys' fees incurred in

connection with the motions.

As directed in the June 24, 2010 D&O, Defendants filed affidavits in support of

the award of costs and attorneys' fees incurred preparing the first and second sanctions

motion ("first fee application") and Plaintiff filed opposing affidavits.  In a Decision and

Order filed October 12, 2010 (Doc. No. 305) ("October 12, 2010 D&O"), the

undersigned granted the first fee application and awarded Defendants a total of $

34,858.53 in attorneys' fees and costs relative to the first and second sanctions

motions, advising that Plaintiff was also responsible for the costs and attorneys' fees

Defendants incurred preparing and defending the first fee application.

Accordingly, on October 21, 2010, Defendants filed papers seeking attorneys'

fees totaling $ 8,771.94 for preparing and defending the first fee application, ("second

fee application"), including the Declaration of Edward Bloomberg, Esq. Pursuant to the

Court's Decision and Order Dated October 12, 2010 (Doc. No. 308) ("Bloomberg

Declaration"), seeking attorneys' fees of $ 595.44, and the Declaration of David S.

Sager, Esq.  Pursuant to the Court's Decision and Order Dated October 12, 2010 (Doc.

No.  309) (First Sager Declaration"), seeking attorneys' fees of $ 8,716.50, for total fees

of $ 9,311.94 for the second fee application.  On October 22, 2010, Plaintiff filed

objections to the October 12, 2010 D&O (Doc. No. 310) ("October 12, 2010 D&O

Objections"), arguing, *inter alia*, the attorneys' fees and costs awarded by the October

12, 2010 D&O was excessive and contrary to law.  In opposition to the first fee

application, Plaintiff filed on October 28, 2010, the Opposition to Defendants' Third

Attorney's Fees Application (Doc. No. 314) ("Plaintiff's Second Fee Application

Response").

In a Decision and Order filed March 21, 2011 (Doc. No.  325) ("March 21, 2011

D&O"), the undersigned granted the third sanctions motion, including Defendants'

request for costs and attorneys' fees incurred in connection with the sanctions motion.

In accordance with the March 21, 2011 D&O, Defendants filed affidavits in support of

the award of costs and attorneys' fees for the third sanctions motion ("third fee

application"), which were opposed by Plaintiff.  In a Decision and Order filed April 27,

2011 (Doc. No. 337) ("April 27, 2011 D&O"), the undersigned granted the third fee

application and awarded Defendants a total of $ 38,821.40 in attorneys' fees and costs.

The undersigned further reminded the parties that Plaintiff was responsible for and

costs, including attorneys' fees, Defendants incurred preparing and defending the third

fee application, and granted Defendant ten days to file affidavits in support of such

costs and fees, with Plaintiff given an additional ten days to file any response.  April 27,

2011 D&O at 15 n.  5.  On May 11, 2011, Plaintiff filed objections to the April 27, 2011

D&O (Doc. No. 343) ("April 27, 2011 D&O Objections"), challenging as clearly erroneous the undersigned's April 27, 2011 D&O granting Defendants third fee application, thereby awarding Defendants costs and attorneys' fees incurred in connection with the third sanctions motion.

Accordingly, on May 6, 2011, Defendants filed the Declaration of David S. Sager, Esq. Pursuant to the Court's Decision and Order Dated April 27, 2011 (Doc. No. 340) ("Second Sager Declaration"), seeking attorneys' fees of $ 5,422.50 for preparing and defending the third fee application pertaining to the third sanctions motion ("fourth fee application"). In opposition, Plaintiff, by letter dated May 26, 2011 (Doc. No. 348) ("May 26, 2011 Letter"), advised that Plaintiff would rely on the arguments presented in Plaintiff's Objections to the April 27, 2011 D&O in opposing the fourth fee application. In reply, Defendants, by letter dated May 27, 2011 (Doc. No. 357) ("May 27, 2011 Letter"), advised that Plaintiff's May 26, 2011 Letter was untimely as it was not filed within 10 days of the Sager Declaration, as the April 27, 2011 D&O directed.

Pending before the court are Defendants' second and fourth fee applications seeking attorneys fees incurred preparing and defending, respectively, the first and third fee applications.  Oral argument was deemed unnecessary.

Based on the following, Defendants' second and fourth fee applications are GRANTED.


**DISCUSSION**

Courts have permitted parties to recover attorneys' fees incurred in connection with preparing and defending applications for the expenses, including costs and

attorneys' fees associated with either successfully making or opposing a motion to compel discovery. *See Metrokane, Inc. v. Built, NY, Inc.*, 2009 WL 637111, at * 3 (S.D.N.Y. Mar. 6, 2009) (granting defendant's fee application seeking attorneys' fees incurred preparing and defending fee application for expenses related to defendant's discovery motions); *Rahman v. Smith & Wollensky Restaurant Group, Inc.*, 2009 WL 72441, at * 7 (S.D.N.Y. Jan. 7, 2009) (awarding defendants 41.2 hours of attorneys' fees incurred in connection with fee application for successfully opposing plaintiff's motion to compel discovery). Similarly, in the instant case, the undersigned has permitted Defendants to recover attorneys' fees incurred in connection with preparing and defending their fee applications for the costs incurred in connection with the first, second, and third sanctions motions.

Traditionally, "in determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The Second Circuit recently "undertook to simplify the complexities surrounding the attorney's fees awards that had accumulated over time" in the district and circuit courts. *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009). In particular, the Second Circuit sought to reconcile the lodestar method with the method, set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) ("the *Johnson* method"), and describing "a one-step inquiry that considered twelve specific factors to establish a reasonable fee." *Simmons*, 575 F.3d at 174 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 114 (2d Cir. 2007)

("*Arbor Hill*").  The Supreme Court, however, has since considered the issue of

attorneys' fees, approving the traditional lodestar method over the more subjective

*Johnson* method, explaining

> Although the lodestar method is not perfect, it has several important virtues.
> First, in accordance with our understanding of the aim of fee-shifting statutes, the
> lodestar looks to "the prevailing market rates in the relevant community."
> Developed after the practice of hourly billing had become widespread, the
> lodestar method produces an award that *roughly* approximates the fee that the
> prevailing attorney would have received if he or she had been representing a
> paying client who was billed by the hour in a comparable case.  Second, the
> lodestar method is readily administrable, and unlike the Johnson approach, the
> lodestar calculation is "objective," and thus cabins the discretion of trial judges,
> permits meaningful judicial review, and produces reasonably predictable results.

*Perdue v.  Kenny A.*, __ U.S. __, 130 S.Ct.  1662, 1672 (2010) (italics in original;
citations omitted).

Nevertheless,

> The lodestar method was never intended to be conclusive in all circumstances.
> Instead, there is a 'strong presumption' that the lodestar figure is reasonable, but
> that presumption may be overcome in those rare circumstances in which the
> lodestar does not adequately take into account a factor that may properly be
> considered in determining a reasonable fee.

*Id*.  at 1673.

Accordingly, the court first determines according to the lodestar method the amount of

attorneys' fees to award on the pending second and fourth fee applications, and then, if

necessary, adjusts the resulting lodestar figure to reflect consideration of any special

circumstances.

In calculating the lodestar amount, the initial burden is on the requesting party to

submit evidence supporting the number of hours worked and the hourly rate claimed.

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The "lodestar" calculation should

exclude fees for work that is "excessive, redundant or otherwise unnecessary," as well

7

as hours dedicated to severable unsuccessful claims. *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433-35).  To prevent the court from reviewing and ruling on each item for which reimbursement is requested, courts have permitted a percentage-based reduction from the number of hours submitted as a means of trimming excess time from the fee request. *McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application." (internal quotation marks and citation omitted)); *see Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1070 (W.D.N.Y. 1997) (recognizing that rather than evaluating and ruling on each time entry for which Defendants seek attorneys' fees, courts are permitted to make a percentage-based reduction in the number of claimed hours "as a means of trimming the fat from the fee request." (citing *Walker v. Coughlin*, 909 F.Supp.  872, 881 (W.D.N.Y. 1995) (reducing by 15 % the total hours requested))).  Courts have permitted up to a 50% reduction in the fees sought where the supporting documentation is so vague as to render it unclear whether time entries are redundant or unnecessary. *See Matusick v.  Erie County Water Authority*, __ F.Supp.2d __, 2011 WL 796510, at * 16 (W.D.N.Y. March 1, 2011) (applying "50% across-the-board reduction in claimed hours" where documentation included "numerous entries about unspecified conferences, telephone calls, e-mail correspondence, and 'reviews.'").

In the instant case, with regard to the second and fourth fee applications, Defendants seek reimbursement of attorneys' fees according to the following schedules listing the hours each attorney worked at the various hourly rates in connection with

each pending fee application.

## SECOND FEE APPLICATION

| Attorney: | Bloomberg[3] | Sager | Marino | Deulks |
|---|---|---|---|---|
| Hourly Rate: | $   330.80 | 530 | 365 | 275 |
| Hours: | 1.8 | 3.1 | 18.4 | 1.3 |
| Sub-Total: | $   595.44 | $ 1,643.00 | $ 6,716.00 | $ 357.50 |
| Total Second Fee Application: | | | | $ 9,311.94 |

## FOURTH FEE APPLICATION

| Attorney: | Sager | Marino | |
|---|---|---|---|
| Hourly Rate: | $   550 | 375 | |
| Hours: | 2.7 | 10.5 | |
| Sub-Total: | $ 1,487.00 | $ 3,937.50 | |
| Total Fourth Fee Application: | | | $ 5,422.50 |
| GRAND TOTAL: | | | **$14,734.44** |

Plaintiff challenges the attorney's fees and costs Defendants seek for the second and fourth fee applications on several grounds, including that the hourly rates used to calculate attorneys' fees are excessive, that the time entries submitted in support of the fees applications are too vague to determine whether the work was necessary or duplicative, and that much of the work for which Defendants seeks attorneys fees could

---

[3] Although Bloomberg's hourly rate was $ 355, for unexplained reasons, Defendants were billed for Bloomberg's services in connection with preparing and defending the second fee application at the hourly rate of $ 330.80.  Bloomberg Declaration ¶ 3.

have been performed by a junior associate attorney, a paralegal, or even clerical staff. Plaintiff's Second Fee Application Response at 1-5.  Plaintiff urges the court to award Defendants no more than $ 3,400 in attorneys fees in connection with the second fee application.  *Id*. at 5.[4]

Preliminarily, insofar as Plaintiff challenges Defendants' attorneys' hourly rates as excessive, the undersigned, for the same reasons discussed in the October 12, 2010 D&O and the April 27, 2011 D&O, does not agree.  Briefly, in the October 12, 2010 D&O, the undersigned found no merit to Plaintiffs' argument that the prevailing hourly attorney rate in Buffalo should be used to calculate the fees to be awarded to Defendants' lead counsel, located in northern New Jersey, not far from New York City given that Defendants had retained their regular counsel to represent them in this action.  October 12, 2010 D&D at 13-14.  Nor were Defendants required to have local counsel, whose hourly rate is lower than Defendants' lead counsel, prepare and defend Defendants' fee application.  *Id*. at 14-15.  Further, the hourly rates charged by both Defendants' lead and local counsel were reasonable for the respective geographic areas based on hourly rates approved in other actions in those same geographic areas, of which the undersigned took judicial notice.  *Id*. at 15-17.  Accordingly, in the instant case, the court finds that the hourly rates claimed by Defendants in connection with both the second and fourth fee applications are reasonable, and the hourly rates will not be reduced.  The number of hours Defendants claim to have expended preparing and

---

[4] Because Plaintiff has not filed a separate response regarding the fourth fee application, Plaintiff has not specified the amount of attorneys' fees that should be awarded in connection with the fourth fee application.

defending the second and fourth fee applications are, however, excessive, and are reduced in accordance with the following discussion.

In particular, having already decided that Defendants were entitled to an award of costs, including attorneys' fees on the first, second, and third sanctions motions, June 24, 2010 D&O at 26 and 31; March 21, 2011 D&O at 94, the only issues before the court on the first and third fee applications were whether the claimed hourly rates and the number of hours Defendants' attorneys expended preparing and defending the first, second and third sanctions motions were reasonable.  That little legal research was required to prepare the first and third fee applications is evident from the papers Defendants submitted in support of the first and third fee applications.  Moreover, although the issues presented in the first, second and third sanctions motions were somewhat unusual, the first and third fee applications were not complex, involving only issues routinely confronted on fee applications.

Specifically, with regard to the second fee application seeking attorneys' fees relative to the first fee application, in support of the first fee application, Defendants submitted declarations from local counsel Edward Bloomberg, Esq. (Doc. No. 299), and lead counsel David S. Sager (Doc. No. 300-2), summarizing the number of hours for which attorneys' fees were requested in connection with the first fee application, and providing the fee charged by each attorney who worked on the first fee application. Attached to both declarations were redacted copies of invoices showing the relevant time entries from each firm's billing records to support the summarized hours claimed by each firm.  An additional attachment to the declaration from Sager is an article from the December 23, 2002 issue of New Jersey Law Journal discussing current prevailing

attorney hourly rates in the largest New Jersey law firms, including Day Pitney.

Defendants also filed a memorandum of law (Doc. No. 300), consisting of four pages of

legal argument, three of which discuss the reasonableness of Defendants' counsel's

hourly rates and referencing a handful of cases supporting Defendants' assertion that

its hourly rates are reasonable within the relevant market, and the fourth page

explaining why the number of hours expended by defense counsel preparing and

defending the first fee application was reasonable, without referencing any caselaw.

Although Plaintiff filed a memorandum of law opposing Defendants' first fee application

(Doc. No. 303), Defendants did not file reply papers in further support of the first fee

application.

Upon reviewing Defendants' papers submitted in support of the second fee

application, the court finds the claimed hours should be substantially reduced.

Bloomberg seeks reimbursement for five entries totaling 1.8 hours, including three

entries totaling 1.4 hours redacting bills, and telephoning and emailing Marino regarding

the redactions.  The redacted invoices (Doc. No. 299-2) to which Bloomberg refers,

however, are not voluminous and the vast majority of the invoice entries are brief, for

example, a September 9, 2009 entry for "Telephone P Marino re motion for sanctions,"

and a January 25, 2010 entry for "Review notice from Court re R&M objections."  In

total, Bloomberg redacted only four of the invoice entries and, given the brief nature of

most of the entries, identifying those to be redacted should not have required much

time or discussion.  Furthermore, the five entries for which Bloomberg seeks

reimbursement lack detail, rendering it difficult to discern whether any time Bloomberg

spent on the first fee application was duplicative of another attorney's work.

Accordingly, the court reduces the 1.8 hours claimed by Bloomberg in connection with the second fee application by 50%, with Bloomberg being reimbursed for the difference of .9 hours at the hourly rate $ 330.80  for a total of $ 297.72 to be awarded for Bloomberg's work on the first fee application.

Similarly, Defendant's lead counsel seeks with regard to the second fee application reimbursement for a total of 22.8 hours expended by three attorneys, including Sager, Marino and Duelks, preparing and defending the first fee application. As discussed, however, Discussion, *supra*, at 11, the only legal research involved in connection with the first fee application was to establish that Defendants were entitled to be reimbursed for their lead counsel at the prevailing rates in northern New Jersey where Day Pitney is located, rather than at the prevailing rate in the Buffalo market, and that the hourly rates claimed by both lead and local counsel were reasonable in their respective markets.  Indeed, Defendants reference only a handful of cases, and attach a then eight-year old article in support of its argument, evidencing that the legal research involved was not substantial.  Nor is it likely that Sager's brief declaration detailing the hourly rates for Sager, Marino and Duelks, or redacting the invoices submitted in support of the second fee application required much time.

Given the lack of details in the time entries for which reimbursement is sought, the paucity of legal research involved in preparing the first fee application, and the rather routine nature of the legal argument, the court will reduce Defendants' lead counsel's hours by the same 50% reduction by which Defendants' local counsel's hours were reduced.  Accordingly, Defendants seek a total of $ 8,716.50 for its lead counsel, from which 50% or $ 4,358.25 is deducted to account for vague time entries that render

13

it impossible to discern whether reimbursement is sought for duplicative efforts and unnecessary time.

As such, Defendants are reimbursed the difference of $ 4,358.25 for its lead counsel.  Together with the $ 297.72 awarded for local counsel, Defendants are awarded on the second fee application a total of $ 4,655.97 for attorneys' fees incurred preparing and defending the first fee application.

Similarly, with regard to the fourth fee application seeking attorneys' fees relative to the third fee application, in support of the third fee application, Defendants submitted declarations from local counsel Bloomberg (Doc. No. 330), and lead counsel Sager (Doc. No. 229), summarizing the number of hours for which attorneys' fees were requested in connection with the third application, and providing the fee charged by each attorney who worked on the third fee application.  Attached to both declarations are copies of invoices showing the relevant time entries from each firm's billing records to support the summarized hours claimed by each firm.  It is only in reply to an opposing memorandum of law filed by Plaintiff (Doc. No. 334), that Defendants filed a reply memorandum of law (Doc. No. 335), consisting of four pages of legal argument, largely repetitive of the legal argument contained in the memorandum Defendants submitted in support of the first fee application (Doc. No. 300).  Nevertheless, Defendants claim a total of 13.2 hours were spent preparing and defending the third fee application, including six hours preparing the reply memorandum.  Furthermore, the time entries submitted in support of the fourth fee application are not sufficiently detailed to permit the court to discern whether the hours claimed were necessary or duplicative of another attorney's work.

14

Under these circumstances, the court again finds a 50% reduction in the number of hours claimed in the fourth fee application in connection with preparing and defending the third fee application is warranted.  Accordingly, although Defendants' fourth fee application seeks $ 5,422.50 in fees, that amount is reduced by 50% or $ 2,711.25, leaving Defendants to be reimbursed for the difference of $ 2,711.25 for preparing and defending the third fee application.

## **CONCLUSION**

Based on the foregoing, Defendants are awarded on the second fee application $ 4,655.97 for attorneys' fees incurred preparing and defending the first fee application, and on the fourth fee application $ 2,711.25 for preparing and defending the third fee application.  In total, Defendants are awarded $ 7,367.22 on both pending fee applications.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       June 13, 2011
             Buffalo, New York